THE BIGELOW COMPANY, OF NEW HAVEN, CONNECTICUT, WHO SUE, &c., v. FERDINAND HEINTZE.

1. In trover conversion is the gist of the action, and the cause of action is complete on proof of the conversion. Ordinarily, an unqualified refusal after demand is conclusive evidence of a conversion.
2. The return of the property after conversion is no bar to the action, but is admissible in mitigation of damages. In such a case the plaintiff will not recover the value of the goods, but the damages he has sustained by the wrongful act, which was the conversion.
3. Where the taking was willful, or the property after the conversion has suffered injury or deteriorated in value, the defendant cannot compel the plaintiff to accept the property in mitigation of damages. But if the property came lawfully into the defendant's possession, or the conversion was technical only, and the property remains in the same condition as before the conversion, the defendant may compel the plaintiff to accept it in mitigation of damages.
4. The plaintiffs delivered to one G. a "'Hogel dryer" under a conditional sale. The machine weighed seven tons, and was secured in G.'s factory in a substantial manner. The defendant, as sheriff, made a levy on the factory and lands on which it stood under an execution against G. on a judgment recovered by one B. Besides the levy on the lands the defendant included the machine in his inventory and levy on personal property. On the 24th of June the plaintiffs served on the defendant a demand in writing for the delivery of the machine. The defendant immediately erased the machine from his inventory and levy on personal property, intending to hold the machine, if at all, as part of the realty. He did not notify the plaintiffs of the fact that he gave up his levy on the machine as personal property, and in reply to a letter from plaintiffs' attorney, desiring to know if the defendant intended to deliver up the property, the defendant, June 30th, wrote: "By direction of counsel we will hold the dryer." The plaintiffs commenced an action of trover July 2d. Cn July 9th the defendant wrote to the plaintiffs' attorney, saying: "So far as I am concerned, while I cannot give you possession, I hereby notify you that I have no claim on said dryer except so far as my levy on the real estate and premises in which

the same is situated may be construed as giving a lien. * * * I however recognize the fact that you may have been misled by my former letter into the belief that I claimed my levy covered the dryer as personal property, and therefore I hand you fifteen dollars to cover costs of suit up to this time." *Held*—

1. That the unqualified refusal in the·letter of June 30th was sufficient evidence of a conversion to sustain an action of·trover.

2. That the refusal of the defendant to disclaim a lien on the machine in virtue of his levy on the lands was no evidence of a conversion.

3. That the defendant's renunciation of any claim upon the machine under his levy on it as personal property effected a complete restoration of the property to the plaintiffs if the machine was personal property.

4. It appearing that the defendant never took possession of the property, and it not appearing that the machine had deteriorated in value in the interval between the two letters of June 30th and July 9th, the plaintiffs were entitled only to nominal damages.

---

This was an action of trover to recover damages for the conversion of a " Hogel drying machine," with countershafts and pulleys.

Garrett Brothers, the owners of a factory in Hudson county and engaged in manufacturing fertilizers, on the 16th of December, 1885, ordered of the Bigelow Company the dryer in question, under the following contract:

" JERSEY CITY, N. J., Dec. 16th, 1885.

"*The Bigelow Co., New Haven, Conn.:*

" You will please manufacture and· ship to the undersigned, at Jersey City, N. J., one Hogel dryer complete, with countershaft and pulleys. In consideration of which the undersigned agree to pay with exchange, besides the freight and warehouse charges, the sum of seventeen hundred and forty-five dollars ($1,745.00). Payment to be made as follows: Less the freight, $32.00; note dated Feb. 12, 1886, payable 3 mos. after date, for $856.00; note dated Feb. 12, 1886, payable 4 mos. after date, for $857.00.

" It is agreed that the above specified articles are to remain the property of said Bigelow Co., and subject to their order, until both of said notes are fully paid, and that upon failure

to pay either of said notes at maturity, said Bigelow Co. may, without impairing the validity of said notes, retake possession of said articles; and the undersigned hereby agree to return and deliver the same to the said Bigelow Co. in good order and condition, and in that event the payment made by the undersigned is to be applied by said Bigelow Co. in satisfaction for the use of said article up to the time of such failure to pay. And it is further agreed that the Bigelow Co., after resuming possession of said articles, may, if they see fit, sell the same, after ten days' notice to the undersigned, at public auction, and apply the proceeds to the payment of such said notes as may yet remain unpaid, rendering the overplus, if any, after discharging all cost and expenses of sale, to the undersigned, whose liability on said notes for any deficiency shall still continue.

" GARRETT BROS."

The machine was delivered and set up in the factory. Notes were given for the purchase money, and at maturity protested for non-payment.

On the 9th of June, 1887, an execution was put in the hands of the defendant, as sheriff of the county of Hudson, at the suit of Robert O. Babbitt against Garrett Brothers, under which he levied on the lands on which the factory was situated, and also upon personal property of the defendants. In the inventory of personal property the dryer in question was mentioned as personal property levied on.

On the 24th of June, 1887, the Bigelow Company, for the benefit of one Malcomson, to whom the contract of December 16th, 1885, had been assigned, served on the defendant a demand in writing for the delivery of the property. After the demand was served, and before suit brought, the defendant erased the dryer from the inventory of personal property; but on June 30th, in response to a letter of the plaintiffs' attorney, inquiring for information whether the defendant would or would not deliver up the property, the defendant replied by letter, " By direction of counsel we will hold the dryer."

Suit was commenced July 2d, by summons returnable July 12th. On July 9th the defendant wrote to plaintiffs' attorney as follows:

" In the matter of the suit brought against me by you as attorney for Alfred S. Malcomson, I desire to say that that 'dryer' which is the subject of controversy is claimed to belong to the real estate, and my levy on it covers that and some of the other fixed machinery as parts of the freehold only. When you demanded of me that I should deliver to you the said dryer, I wrote you I could not do so, my reason being that it is a physical impossibility, as the dryer weighs, I am informed, some eleven tons, and is so fixed in the building that the building would probably have to be torn down to get it out. I think you have taken rather a peculiar course in suing me, as an action of replevin would have raised all the questions and would have brought to the front the people interested in the real estate who claim the dryer under their levies and mortgages as part of the real estate, especially as you were informed by Mr. Babbitt that it was claimed to be real estate, and that the gentleman holding the purchase money mortgage claimed that the dryer was annexed to the freehold. However, I have to say that, so far as I am concerned, while I cannot actually give you possession, for the reason aforesaid, yet I hereby notify you that I have no claim on the said dryer except so far as my levy on the real estate and premises in which the same is situated may be construed as giving a lien. If the 'dryer' is part of the real estate, my levy covers it; if it is not, the levy does not cover it; so I am unable to see how you can settle the question you desire to raise in this suit. I however recognize the fact that you may have been misled by my former letter into the belief that I claimed my levy covered the dryer as personal property, and I therefore hand you fifteen dollars to cover your costs of suit up to this time.

" FERDINAND HEINTZE."

The trial judge directed the jury to find a verdict for the plaintiffs for the market value of the dryer, and granted a rule to show cause why the verdict should not be set aside.

Argued at February Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiff, *Joseph Alward.*

For the defendant, *Babbitt & Lawrence.*

The opinion of the court was delivered by

DEPUE, J.   The transaction between Garrett Brothers and the Bigelow Company under the contract of December 16th, 1885, was not simply an agreement for the possession of the property under an executory contract to purchase on payment of the stipulated price.   The notes given by Garrett Brothers for the purchase money were unconditional promises to pay. The clause in the contract providing for the redelivery of possession and the sale of the property by the Bigelow Company as the means of realizing the unpaid purchase money, rendering the surplus, if any, to Garrett Brothers after payment of the notes and the cost and expenses of the sale, and retaining the liability of Garrett Brothers for the deficiency, indicates that the intention was to transfer to Garrett Brothers, if not property, at least some proprietary interest in the machine.   Under this arrangement the machine was set up in the factory.   The proof is, that the machine weighs seven tons, and is secured in the factory in a substantial manner. There is also evidence that part of the building in which it was placed was erected around the dryer after it was put in, and that it would be necessary to take out the side of the building to remove the machine.

Whether, under the circumstances, the machine became part of the realty, we do not propose to decide at this time; the proper parties (the owner of the fee and mortgagees) are not here to make a decision on that subject a finality.   It is suf-

ficient for present purposes to say, that it is a debatable question whether the property was not so annexed to the realty as to be embraced in the sheriff's levy on the lands.

We propose to consider only the propriety of the judge's direction of a verdict for the plaintiffs, assuming that the dryer was a fixture that might be removable, and the measure of damages adopted.

In trover conversion is the gist of the action; the plaintiff must prove property in himself and a *wrongful* conversion. 1 *Chit. Pl.* 146; 9 *Bac. Abr.* 629, *tit. "Trover."* The defendant had no actual possession of the machine; while it remained on his inventory as personal property, it was left undisturbed on the premises as it had been set up. To furnish the evidence necessary to show a conversion, the plaintiff relied on demand and refusal. Demand and refusal do not of themselves amount to a conversion; they are only the evidence on which a jury may find a conversion. If on special verdict the jury finds only demand and refusal, without expressly finding the conversion, the court can give no judgment upon it. 10 *Co.* 56, 57; 2 *Saund.* 47*b*. The demand must be made at a time and place and under such circumstances as that the defendant is able to comply with it if he is disposed, and the refusal must be wrongful. If the refusal be qualified, or there be a condition annexed to it, the question then will be whether it be a reasonable one. 2 *Saund.* 47*k* and *notes;* 1 *Chit. Pl.* 160; *Poll. Torts* 291. See, also, *Big. Torts* 344–453, where the subject of conversion is fully discussed.

At the time of the service of the demand the defendant had a lien on the machine of a two-fold character, or rather in the alternative, either under his levy upon it as personal property or in virtue of his levy on the real estate. The deputy sheriff testified that, after the service of the demand, he called on Babbitt to know what should be done in the matter, and that Babbitt directed him to strike the machine · out as personal property, that " we could only hold it as part of the freehold ;" and that he struck it out of the inventory of the personal property the next day after service of the demand. On the

27th of June, and again on the 29th, the plaintiffs' attorney wrote to the sheriff, requesting to be informed whether he would comply with the demand. In the last of these letters the attorney writes requesting information, by return of mail, whether the defendant would "deliver up the property or refuse to do so," adding, "if you do not *surrender the property* we desire to take legal steps for its recovery." In reply to the letter of June 29th, the letter of the defendant of June 30th was sent, in which he says, "By direction of counsel we will hold the dryer." The defendant's letter of June 30th was written by his clerk. It does not indicate whether the proposition was to retain hold of the machine as personal property or as part of the realty as an incident of the levy on the lands. The deputy sheriff, who had the entire management of the business, testifies that this letter was incomplete and was explained by the letter of July 9th, and it is plain that if his testimony with respect to his instructions from Babbitt and the erasure of the machine from the inventory of the personalty be correct, it was not intended to hold the machine as personal property. But this intention being undisclosed to the plaintiffs, and the refusal being unqualified, it was evidence that would have warranted a jury in finding a conversion notwithstanding the defendant had erased the machine from his inventory and discharged his lien upon it as personal property. *Burroughes* v. *Bayne*, 5 *Hurlst. & N.* 296. Ordinarily, an unqualified refusal after demand is regarded as conclusive evidence of a conversion, and I would be disinclined to disturb the verdict because the judge so regarded the letter of June 30th.

. The defendant's letter of July 9th was written after suit brought. In it the defendant says that he cannot deliver the machine to the plaintiffs because it is a physical impossibility, and the mortgagees and purchasers of the land claim the machine as part of the realty ; but he adds that, "So far as I am concerned, while I cannot give you possession, for the reason aforesaid, yet I hereby notify you that I have no claim on said dryer except so far as my levy on the real estate and

premises in which the same is situated may be construed as giving a lien. * * * I however recognize the fact that you may have been misled by my former letter into the belief that I claimed my levy covered the dryer as personal property, and therefore hand you fifteen dollars to cover your costs of suit up to this time." The plaintiffs made no objection to the sum tendered as insufficient to pay costs, but proceeded in the suit.

The sheriff's disavowal of any claim under his levy on the machine as personal property was all that the officer could reasonably be required to do. By his levy on the realty he acquired no title to the lands. In virtue of his process he had only a naked power to sell according to the mandate of the writ, in order to execute the lien of the judgment created by the statute. *Hackensack Water Co.* v. *DeKay,* 9 *Stew. Eq.* 548. As an officer executing the process of the court, he had no power to surrender any right in the premises acquired under his official acts. *Townshend* v. *Simon,* 9 *Vroom* 239, 246; *Shann* v. *Jones,* 4 *C. E. Gr.* 251. In the letter of July 9th the sheriff simply notified the plaintiffs of his levy on the lands, stating correctly the legal incidents of the levy, leaving the plaintiffs to repossess or to recover the property, if it be personal property, as they might be advised. In these facts there would be no evidence of a conversion whereon to found an action of trover. It would be absurd to hold that a levy on lands was a conversion of fixtures upon it, and quite as rational to subject a sheriff having a levy on lands to an action at the suit of a prior mortgagee for refusing to disavow a purpose to impair or affect the interest of the mortgagee as to subject him to an action of trover for refusing to make a like disclaimer with respect to fixtures. If the letter of July 9th had been sent in response to the plaintiffs' demand of possession, instead of the letter of June 30th, or if, notwithstanding that letter, it had been transmitted to the plaintiff before suit, there would have been no evidence of conversion. *Hayward* v. *Seaward,* 1 *Moo. & Sc.* 459.

.In trover the cause of action is complete upon proof of the conversion. The return of the property is no bar to the action, but is admissible in mitigation of damages. *Sedgw. Dam.* 689. The reason on which this doctrine rests is, as was said by Chief Justice Green, that " It will show that the plaintiff has sustained less injury, and is consequently entitled to less damages by way of compensation than he otherwise would have been." *Hopple* v. *Higbee,* 3 *Zab.* 342, 346. The occasions on which this rule has been invoked have usually been when the property has been tortiously taken from the plaintiff's possession, and it is said that the return of the property must have been accepted in order to allow the defendant to avail himself of its restoration in mitigation of damages, and such is undoubtedly the rule where the property in the meantime has deteriorated. 3 *Suth. Dam.* 530. But there may be circumstances in which the renunciation by a defendant of his claim will as completely effect a restoration of the property as if the plaintiff accepted it. Thus, in *Delano* v. *Curtis,* 7 *Allen* 470, the controversy was over engines, boilers and shafting in a workshop, which had been mortgaged by the owner to both the parties. The defendant took possession of the shop and machinery, and when the plaintiff came there to take possession under his mortgage, forbade its removal. In an action for the conversion, the court held, that inasmuch as it did not appear that the defendant had ever appropriated the machinery to his own use or removed the same, or had the actual possession of the shop, and that the alleged conversion consisted in the refusal to allow the plaintiff to remove the same on demand, a subsequent notice to the plaintiff that he relinquished all claim to the machinery should have been considered in mitigation of damages. Mr. Sutherland, after discussing the cases, states the law as follows : " If there was a willful taking of the property, or a willful refusal to surrender it on demand, or the property has suffered any injury or deterioration in value, the defendant cannot compel the plaintiff to accept the property in mitigation of damages. But if the property came lawfully into the defendant's possession, and his refusal to

surrender was qualified, or the conversion technical only, or without intentional wrong on the part of the defendant, and the property remains strictly in the same condition as before the conversion, the defendant may compel the plaintiff to accept it in mitigation." 3 *Suth. Dam.* 530.

In the English courts it is also settled that where the property has *in fact* been restored to the plaintiff, whether before or after suit, that fact will go in mitigation of damages; and under certain circumstances he will be compelled to accept the return of the property. Usually this is accomplished by application to the court to stay proceedings on giving up the property and paying costs. In *Fisher* v. *Prince,* 3 *Burr.* 1363, Lord Mansfield and Mr. Justice Wilmot both concurred in the following distinction : " That where trover is brought for a specific chattel of an ascertained quantity and quality, and unattended with any circumstances that can enhance the damages above the real value, but that its real and ascertained value must be the sole measure of the damages, there the specific thing demanded may be brought into court; but where there is an uncertainty either as to the quantity or quality of the thing demanded, or there is any tort accompanying it that may enhance the damages above the real value of the thing, and there is no rule whereby to estimate the additional value, there it shall not be brought in." In that case the application was for a stay of proceedings on bringing the goods into court and paying costs. The rule was refused, it appearing that the goods had been altered and their value changed. But Lord Mansfield said that " such motions ought neither to be refused nor granted of course ; they must depend on their own circumstances. No injury is done to the plaintiff if the court should think that he ought not to proceed for damages beyond the particular thing; he may proceed for more at the peril of costs ; and so he ought." In *Pickering* v. *Trustee,* 7 *T. R.* 53, the rule was granted, against the opposition of the plaintiff, in favor of defendants, who, as officers of the revenue, had seized " fourteen hides," and afterwards found out that the leather had been improperly seized and they could not

justify. In *Hiort* v. *L. & N. W. Ry. Co.*, 4 *Exch. Div.* 188, 195, Bramwell, L. J., said : "A conversion cannot be purged, and if a defendant is guilty of conversion he must pay some damages. A return of the goods undoubtedly might be shewn to reduce the damages in the case of a conversion, not only where the owner voluntarily received back the goods, but where he took them back against his will. In an action of trover and conversion, the practice was for a defendant to apply to the court for a stay of proceedings on the delivery up of the goods, and on payment of nominal damages and costs ; but if the plaintiff refused to accept delivery, and insisted on proceeding with his action for substantial damages, he did so at his peril, and if he failed to get substantial damages he was made to pay the costs of the action. It is clear, therefore, that on the return of the goods the plaintiff would recover, not their value, but the damages he had sustained by the wrongful act, which was called the conversion."

In the case in hand, the machinery was left undisturbed as it was set up, by the license or acquiescence of the plaintiffs. When the defendant was notified that the plaintiffs claimed the property, he erased the machinery from his inventory and levy. The act which *ipso facto* discharged his lien upon it as personal property was done before suit. The conversion which gave the right to the action of trover arose entirely from the letter of June 30th. It was what Lord Justice Bramwell described as a conversion according to law as distinguished from a conversion in fact—a mere technical conversion ; and there is a broad distinction between a conversion which will uphold the action of trover and a conversion which will justify damages to the value of the property in dispute—a distinction fully recognized in *Hiort* v. *L. & N. W. Ry. Co., supra.* In commenting on conversion as a cause of action, as distinguished from conversion in its effect on the measure of damages, Lord Justice Thesiger observed : "It is said that there is some magic in the term 'conversion,' and the arguments for the plaintiffs may be put thus : The unauthorized delivery constituted conversion ; the plaintiffs have never received their

goods; consequently the damage which they are entitled to recover in respect to that conversion, is the full value of the goods. That argument is not sound. No doubt the action of trover has been surrounded by technicalities, which may have, in some instances, worked injustice. I think, however, of late the tendency of the courts has been to treat this action with more common sense than it had been previously treated. Just as in other actions of tort it is held that a person to whom a wrong has been done can only recover the damages which flow from the wrong; so in an action of trover it is the tendency of the courts to apply the same rule." In that case there was a conversion by an unauthorized delivery of property, but it appearing that the plaintiffs had sustained no damages beyond the temporary deprivation of their control over the goods, the court awarded only nominal damages.

If the plaintiffs were misled by the letter of June 30th, and induced to bring trover instead of resorting to other means to recover the property, the defendant may be estopped from denying that the action was properly brought, but the estoppel works no further. In *Phillipsburg Bank* v. *Fulmer*, 2 *Vroom* 52, the garnishee in the attachment had admitted that he owed the defendant in attachment a large sum, on the faith of which the attachment was taken out and a *scire facias* issued. This court held that the garnishee's admission did not estop him in the trial on the *scire facias* from proving that he was not indebted to the defendant when the attachment was issued. The court said: "The sole injury complained of was the liability to costs in consequence of the verdict. If the estoppel could be so used as merely to charge the defendant with costs, or if it was sought to be applied merely to prevent the plaintiff from being turned around to another form of action, it would be a legitimate use of it; but so to apply it as to charge the defendant with the payment of a large sum of money which he does not owe, which, if the principle be correct, might as well be twenty thousand as two thousand dollars, to save the plaintiff a few dollars costs, is to

make the estoppel the means of working and not preventing a serious injury."

Any misapprehension as to the nature of the defendant's claim of right in the property occasioned by the letter of June 30th, was removed by the letter of July 9th, and the reparation proffered was adequate to compensate the plaintiff, for any loss arising from adopting a form of action which, if prosecuted successfully, would result in no substantial benefit. In the interval between the two letters it does not appear that the property had in any way deteriorated; nor is there any ground to suspect that in these proceedings the defendant did not act in entire good faith. Following common law precedents the defendant might have obtained relief by application to the court; and as the case appeared at the trial the verdict should only have been for nominal damages.

The rule to show cause is made absolute.