MERVILLE H. CARTER, JOHN G. KRUG, MICHAEL SHEEHAN, Individually and as Constituting the the Bondholders' Committee of the Big Vein Pocahontas Coal Company,

*vs.*

## ELLA L. HUGHES.

*Trover: bonds deposited with reorganization committee.*

Upon the insolvency of a corporation, a bondholders' committee was formed to protect interests of depositing bondholders; the committee had full power to represent such bondholders, with the right to take and pursue any action which in their discretion they might deem expedient; after deliberating for several years, the appellee, voluntarily and without compulsion of any kind, deposited her bonds under the agreement; subsequently the committee formed a plan of reorganization, and then submitted the same to the bondholders for their ratification; at such meeting the plaintiff was represented by her husband and the proposed plan was ratified and adopted, in pursuance whereof the bonds deposited were sold by the committee; the plaintiff, more than two years after such sale, brought an action of trover against the members of the committee; *held,* that the facts presented no such wrongful or illegal conversion of the plaintiff's bonds as would permit recovery in trover against the defendants. p. 481

*Decided January 15th, 1919.*

Appeal from the Superior Court of Baltimore City. (Dawkins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Robert R. Carman* (with whom were *Keech, Wright* and *Lord* on the brief), for the appellants.

*Richard B. Tippett* and *J. Royal Tippett,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action of trover to recover for the alleged unlawful conversion of six twenty-year bonds of the Big Vein Pocahontas Coal Company, a corporation of the State of West Virginia, of the par value of one thousand dollars ($1,000) with certain coupons attached. The bonds were secured by a deed of trust from the company to the Colonial Trust Company of Baltimore, as trustee, on its coal property and equipment located in Tazewell County, West Virginia.

The suit was brought against the appellants individually and as members of the Bondholders Committee of the coal company, and also against the Organization Company and the Big Vein Pocahontas Company, corporations participating in the re-organization, as will hereafter appear in the course of this opinion.

At the trial of the case a verdict was rendered in favor of two of the defendants, the Organization Company and the Big Vein Pocahontas Company, but in favor of the plaintiff against the other defendants for the sum of $8,682.00. From a judgment on this verdict in favor of the plaintiff for $8,-682.00, with interest from April 12, 1918, and costs, this appeal has been taken.

The questions in the case are presented by a single exception, and that is to the rulings of the Court upon the prayers and to special exceptions reserved to these rulings.

At the close of the evidence offered the plaintiff submitted one prayer for the instruction of the Court, sitting as a jury, and this prayer was granted. The defendants submitted six separate prayers which were demurrers to the evidence and

each asked for an instruction to the effect that there was no evidence in the case legally sufficient to entitle the plaintiff to recover against either of the defendants. The first and second prayers as to the Organization Company and the Big Vein Pocahontas Company were granted, but the prayers as to the other defendants, the appellants in this case, were refused.

In the view we take of this case after a careful examination of the evidence and the law applicable to the facts as disclosed by the record, we are of opinion that there is no evidence legally sufficient to entitle or to permit the plaintiff to recover against either of the defendants, and the Court below committed an error in refusing the appellants prayers.

Many of the most important facts of the case are undisputed and about which there can be no contention and will be found fully and carefully stated in *Carter* v. *First National Bank, Pocahontas,* 128 Md. 584.

The substantial cause of action and the basis of the complaint as set out in the declaration was the purchase by the appellants as members of the bondholders committee of a tract of land consisting of 27,000 acres, formerly owned by the Fairmont-Buchanan Coal Corporation.

The conversion of the bonds is based upon the theory that the Bondholders Committee violated and departed from the terms of the bondholders deposit agreement in the purchase of these coal lands in the course of their reorganization proceedings.

It appears that the Big Vein Pocahontas Coal Company was incorporated on the 25th day of March, 1909, and shortly thereafter executed a deed of trust to the Colonial Trust Company of Baltimore of its property to secure an authorized issue of 400 six per cent. twenty-year bonds of the par value of $1,000 each, and of this number on or about 275 of the bonds were issued. The six bonds here in dispute were of those issued and were on the 14th of April, 1910, purchased by the appellee.

On the 28th of October, 1910, the coal company was de-
clared to be insolvent by the Circuit Court of the United
States for the Western District of Virginia, and receivers
were duly appointed for the company.   The property was
operated by the receivers under the direction of . the Court,
until the 31st of December, 1914, when the property was sold
under foreclosure proceedings and purchased by the Big Vein
Pocahontas Company, which had been incorporated for the
purpose.

On the 2nd of November, 1910, at a meeting of the bond-
holders of the coal company a deposit agreement was entered
into wherein the appellants among others were constituted a
Bondholders Committee and the Colonial Trust Company of
Baltimore City the depository for the protection of the out-
standing bonds which had been certified and issued under the
deed of trust.

The agreement is set out in the record and the powers of
the committee in so far as they bear upon this case provides:

> "Whereas the depositing bondholders deem it ad-
> visable to place their bonds in the hands of the com-
> mittee, with full power to represent their interest in
> respect thereof, without limitation upon the commit-
> tee to take and pursue, in the exercise of their discre-
> tion, any course of action they may deem wise and
> expedient and which discretion is hereby declared to be
> absolute."

It witnesseth, that

> "In consideration of the mutual benefits arising and
> to arise by virtue of the terms and provisions hereto,
> the depositing bondholders do hereby agree to and with
> each other, and with the committee, forthwith to de-
> posit with the Colonial Trust Company the number
> and amount set opposite their respective names, of the
> six per cent. sinking fund gold bonds of the Big Vein
> Pocahontas Coal Company, with coupons due Novem-
> ber 1st, 1910, and all subsequent coupons thereto
> attached, and to accept the receipt of said Colonial
> Trust Company therefor."

And the holder of the receipt by accepting it assents to the agreement of deposits and each and all of the provisions thereof:

"First—The Committee is hereby invested with title to the bonds and coupons and with all the rights and powers of the Depositing Bondholders, as owner or holders thereof, individually and collectively.

"Second—The Committee shall have power to bid for and buy in the property and franchises of the Company at any receiver's foreclosure or other sale for the enforcement of the lien of the Mortgage or Deed of Trust securing said bonds, and shall have power to organize or cause to be organized a new corporation to take over, hold and operate the same, which new corporation shall have such capitalization, that is to say, capital stock, common or preferred or both, and bonded debt, as the Committee may deem wise or find it necessary. The Committee shall have the right to use the bonds deposited hereunder or the dividends payable thereon for the purpose of making payment, in whole or in part, for the property and franchise so purchased, and shall give, return and accord to the Depositing Bondholders the securities of said new corporation in such amounts, and of such character, kind and relative priority or priorities as the Committee shall deem and consider to be fair and adequate, having regard to the sound financial and legal reorganization of the property, finances and affairs of the present company, and the interests therein of the depositing bondholders, but without preference or priority of any bond deposited hereunder as against any other bond so deposited.

"The Committee shall have power to pledge, mortgage and convey the property and franchises, so purchased, as security for the payment of such sum or sums of money as they shall deem expedient to borrow or obtain upon the security thereof, for the purpose of paying, in whole or in part, the purchase price thereof, or of paying or discharging any claim or that which has or constitutes a lien on the property and

franchise of the Company prior to the lien of the Mortgage or Deed of Trust securing said bonds, or of providing an adequate working capital for the new corporation so organized or for any other purpose appurtenant to or connected in any wise with any one or more of said purposes, and wise or expedient in the judgment of the Committee, including the costs and expenses as herein elsewhere specified * * *

"Fifth—The Committee shall have power to incur debts for any proper purpose connected with this agreement and the protection of the interests of the Depositing Bondholders under the terms hereof, or for purchasing any claims or debts due or owing by the Company, which have or constitute liens upon its property and premises prior to the lien of the Mortgage or Deed of Trust securing said bonds. * * * "

Under the deposit agreement 269 of the 275 bonds which had been issued were deposited prior to the judicial sale of the property of the company. The appellee deposited her bonds about two days before the sale and nearly four years after the agreement, which resulted in the plans for the reorganization for the protection of the depositing bondholders.

The proof shows there were several plans submitted for consideration by and to the committee to effect a reorganization and one that could be successfully financed when adopted and formed.

On the 15th day of December, 1914, the appellants entered into an agreement with the Organization Company, a corporation of the State of Maryland, to which was referred a preliminary plan of organization which is set out in the record, and this included the purchase of the property of the coal company at the judicial sale. The property, after the purchase, was to be conveyed to a corporation to be incorporated to take care of the depositing bondholders and was to be incorporated under the name of the Big Vein Pocahontas Company, a new company with a capital stock not to exceed three million five hundred thousand dollars and the bonds to be

secured by a deed of trust to the Fidelity Trust Company of Maryland as trustee.

Subsequently, on the 26th of December, 1914, the committee in pursuance of the power vested in it by the deposit agreement caused to be incorporated the new company to take over the property to be purchased at the sale and for purposes specifically stated in its articles of incorporation.

While the plan of reorganization which was submitted to the Organization Company provided that the new company would acquire a large tract of undeveloped coal property owned by the Fairmont Buchanan Coal Company, it is very clear that the appellants did not commit the depositing bondholders of the old company or the stockholders of the new without their consent.

By the plan of reorganization it is provided as soon as organized a proposition will be submitted to the stockholders of the new company to acquire the property of the Fairmont Buchanan tract upon terms which have been already submitted to and approved by the committee so far as it is empowered so to do the aggregate price being, etc., etc.

It further appears from the evidence that the proposition of the Organization Company for the sale of the Fairmont Buchanan property on which it had an option was submitted to a meeting of the stockholders on February 2nd, 1915, and was not acted on. The following resolution was passed at this meeting and a notice of the meeting sent and received by the appellee.

"*And Resolved Further,* That a meeting of those persons, who, as holders of bonds of Big Vein Pocahontas Coal Company deposited with the Committee of said Bondholders under the Bondholders' Deposit Agreement dated November 2, 1910, and whose names appear on the list thereof submitted with the proposition of said committees will, by virtue of said Plan of Reorganization, become stockholders of this Company, shall be forthwith called, whether certificates for the shares of stock to which they will be respectively entitled under said plan, be actually issued or not, to be held

on Wednesday, February, 10th, 1915, at 12 o'clock noon, at the office of Messrs. Keech, Wright & Lord, 900 Maryland Trust Building, Baltimore, Maryland, at which meeting the plan of reorganization submitted by said Committee and the proposition of The Organization Company, heretofore laid before the meeting, shall be submitted for the approval of said stockholders.

"*And Resolved Further,* That the Secretary, to be elected at the meeting of the Directors of this Company to be held this day, shall be and he is hereby directed to give notice of said meeting to stockholders in the manner provided by the By-Laws of the Company."

At the meeting held on February 10th, 1915, the proposition to acquire the Fairmont Buchanan property was acted upon by the former bondholders of the old company and received the vote of a majority of them. The whole plan of reorganization was submitted to the judgment and determination of the stockholders and by their action adopted and approved. The plaintiff was represented by her husband at the meeting at which the plan of reorganization was approved and adopted, including the purchase of the Fairmont Buchanan property.

It would seem to be apparent then from the undisputed evidence in the case, that there was no such wrongful or illegal conversion of the plaintiff's bonds as would permit a recovery in an action of trover against the appellants.

The evidence clearly shows that she voluntarily and without compulsion of any kind after four years of consideration deposited the bonds with the Colonial Trust Company under the deposit agreement and received a receipt therefor. More than two years after all the plans of reorganization had been adopted and after six bonds of the new company and 600 shares of stock have been turned over to the Colonial Trust Company for her account she brings this suit, alleging conversion of her six bonds.

Under the proof disclosed by the record we are unable to hold that the appellants either individually or as constituting the Bondholders Committee can be charged with having wrongfully converted the plaintiff's bonds as alleged in the declaration.

In no aspect in which the evidence may be viewed can it be held that the Bondholders Committee committed the act of which the plaintiff complains, but that the plan of organization which they suggested was finally consummated by the Organization Company to which it had been referred, and the plan of reorganization was finally approved and adopted at the stockholders' meeting.

The rule of law to sustain an action of trover is too well settled in this State to need further discussion and will be found clearly stated in numerous cases. *Harker* v. *Dement*, 9 Gill, 7; *Dungan* v. *Mt. Ben. Life Ins. Co.*, 38 Md. 242; *Levi* v. *Booth*, 58 Md. 305; *Crocker* v. *Hopps*, 78 Md. 260; *Bonaparte* v. *Clagett*, 78 Md. 87; *Winton Co.* v. *Meister & Patterson*, 133 Md. 318; *Poe's Pleading & Practice*, 67-219.

For the reasons stated the defendant's third, fourth, fifth and sixth prayers asking for instructions that there was no evidence in the case legally sufficient to entitle the plaintiff to recover against the defendants individually or as members of the Bondholders Committee of the Big Vein Pocahontas Coal Company and the verdict shall be for the defendants should have been granted.

As this conclusion disposes of the case the other questions presented are unimportant and need not be considered. For the reasons stated the judgment will be reversed, and as there can be no recovery a new trial will not be awarded.

*Judgment reversed, without a new trial, with costs.*