WESTERN MARYLAND DAIRY, Incorporated, *vs.* MARYLAND WRECKING AND EQUIPMENT COMPANY et al.

*Fixtures—Exception from Sale—Prospective Severance— Rights of Purchaser—Conversion— Essential Elements.*

Where, in a contract for the sale of property occupied by a dairy company, the vendor reserved a right to remove from the property "all machinery and equipment located therein," the term "equipment" included anything provided for efficient service in the dairy business, as conducted on the premises, and so included fixtures.                              p. 321

While fixtures will ordinarily pass from the vendor to the vendee with the title to land, yet the parties may agree otherwise.                              p. 321

Things annexed to the soil may, by agreement of the parties, be treated as personalty, and damages for their conversion be recovered in trover. p. 322

Where, in a contract for the sale of land, the vendor reserves a right to remove fixtures thereon before a named day, the fixtures, if not removed by the day specified, or by a later date as agreed or enlarged by waiver, retain their nature as part of the realty and pass to the vendee. p. 322

Where there was, in a contract for the sale of land, a reservation in favor of the vendor of a right to remove fixtures provided they were removed before a date named, the fixtures did not become personal chattels until there was an actual severance and removal, but as between a purchaser of the fixtures and the vendor, they were potential personal property, and their sale was one of goods and chattels. p. 322

Defendant, who sold to plaintiff fixtures on land, was not liable to the latter as for conversion, because one to whom defendant sold the land prevented removal of the fixtures, defendant not having claimed the fixtures, nor taken or used any part thereof, and having left them on the land to be removed by plaintiff. p. 327

In order to constitute conversion, one must appropriate or destroy another's property, exercise dominion over it in defiance of the owner's rights, or withhold the possession from him under an adverse claim of right. p. 327

Where, at the time of delivery of the deed to the purchaser of land, one who had purchased the fixtures thereon from the vendor of the land was in possession for the purpose of removing the fixtures, the grantee took with notice of such purchaser's rights, and subject thereto, the vendor having reserved the right to remove the fixtures within a named time, which was extended by the grantee who, after the end of the extension, and while such purchaser was in possession, permitted him to continue to remove the fixtures. p. 328

Mere delay by a vendor of fixtures in making a full and complete delivery of the fixtures, which are subsequently wholly taken possession of by the buyer, is not an act of conversion. p. 328

If there is no unlawful taking or exercise of dominion over a chattel, one's mere failure to perform in regard thereto some affirmative act which he has by contract assumed, or his non-feasance or neglect of a legal duty, does not involve a conversion.                    p. 328

One must have or take actual or constructive possession to be guilty of a conversion.                    p. 329

To prove a constructive conversion by defendant, plaintiff must give evidence of a demand for the chattels, and a refusal of the demand, at a time when defendant had the power to give up the goods.                    p. 329

To prove a conversion by defendant, there must usually be evidence of his intention either to take to himself the property in the goods, or to deprive plaintiff of some right therein.
                    p. 330

*Decided July 1st, 1924.*

Appeal from the Court of Common Pleas of Baltimore City (AMBLER, J.).

Action by the Maryland Wrecking and Equipment Company and Harry Klaff, trading as Harry Klaff & Company, against the Western Maryland Dairy, Incorporated, and the News Publishing Company. From a judgment for plaintiffs against the first named defendant, it appeals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*George W. Lindsay,* with whom were *Sauerwein, Lindsay & Donaho* on the brief, for the appellant.

*Joseph Bernstein,* with whom were *Rosenbush & Bernstein* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The Maryland Wrecking and Equipment Company, a corporation, and Harry Klaff, trading as H. Klaff and Company, recovered against the Western Maryland Dairy, Incor-

porated, the sum of twenty-five hundred dollars in an action of trover and conversion. The suit was brought by the Maryland Wrecking and Equipment Company as owner against the Western Maryland Dairy and the News Publishing Company, joint *tort feasors*. During the course of the case, Harry Klaff, trading as H. Klaff and Company, was made a co-plaintiff. At the close of the proof the court instructed the jury that there was no legally sufficient evidence to warrant a recovery against the News Publishing Company, but declined a similar instruction for its co-defendant.

The Western Maryland Dairy owned a property in Baltimore bounded by Hamilton, Courtland and Center Streets and Hargrove Alley, which it agreed, on March 14th, 1922, by a written contract, to sell to the News Publishing Company of Baltimore City. The transaction was to be closed at any time on or before the 31st day of December, 1922, the vendor reserving the right to remove from the property, before the date of the transfer, "all machinery and equipment located therein."

Anything provided for efficient service in the dairy business, as conducted on the premises of the appellant that were sold to the News Publishing Company, would be included in the term "equipment" as used in the contracts in this case. It, therefore, would include fixtures. *Appeal Tax Court* v. *St. Peter's Academy*, 50 Md. 346; *Redemptorists* v. *Howard County*, 50 Md. 449, 452; *Warren Mfg. Co.* v. *Baltimore*, 119 Md. 200, 205; *Com.* v. *Breakwater Co.*, 214 Mass. 10, 100 N. E. Rep. 1034, 1037; *Kirwan* v. *Latour*, 1 H. & J. 289; *Dudley* v. *Hurst*, 67 Md. 44.

It follows that the expression "all machinery and equipment located therein," embraced fixtures.

While fixtures will ordinarily pass from the vendor to the vendee with the title to the land, yet the parties may agree otherwise. In *Walker* v. *Schindell*, 58 Md. 360, it is recognized that the common law rule by which "whatever is affixed or annexed to the soil or freehold becomes a part of it, and cannot be removed except by him who is entitled to the

inheritance" may be modified or changed by agreement of the parties so that fixtures so annexed may, subject to certain qualifications, be treated as personalty, and damages for their conversion may be recovered in trover. While the agreement in the case cited was made before the fixtures were annexed, it would seem that it would have been just as effective, if it had been made afterwards. *O'Brien* v. *Mueller,* 96 Md. 134, 137; *Baldwin* v. *Francis,* 118 Md. 117, 181; *Lewis* v. *Schlichter Co.,* 137 Md. 224; *Northern Central Railway Co.* v. *Canton Co.,* 30 Md. 347, 352, 355; *Willard* v. *Higdon,* 123 Md. 449, 451; Code, art. 83, sec. 97.

In this case there was no *absolute* agreement by the vendor and vendee for a severance of the fixtures, but a contingent one, creating a right which was dependent upon the condition precedent that the physical detachment and removal of the fixtures from the premises must be made before a named day.

If this condition precedent be not fulfilled by the severance and removal of the fixtures and personal property by the day specified, or by a later date as agreed or as enlarged by waiver, the fixtures retain their nature as part of the realty and pass to the vendee. *Carlin* v. *Ritter,* 68 Md. 478; 11 R. C. L. *"Fixtures"* sec. 12; *Loughran* v. *Ross,* 45 N. Y. 792; See also *Mengal Box Co.* v. *Moore,* 114 Tenn. 596, as reported and annotated in 4 A. & E. Ann. Cas. 1047.

It is a result of this agreement that the fixtures would not become, as against the vendee, personal chattels until there was an actual severance and removal. As between the purchaser of the fixtures and the vendor, the fixtures were potential personal property, and their sale should be regarded as one of goods and chattels. *Purner* v. *Piercy,* 40 Md. 224; 11 R. C. L. *"Fixtures,"* sec. 10; *Searle* v. *Bishop of Springfield,* 203 Mass. 493; See 1 *Williston on Sales,* (2nd ed.) sec. 66, p. 104.

As the exception of the fixtures was an express condition of its purchase, the News Publishing Company was fully bound by all the legal consequences. *Walker* v. *Schindel,* 58 Md. 364, 365; *Newbody* v. *Peabody Heights Co.,* 70 Md.

493; *Peabody Heights Co.* v. *Wilson*, 82 Md. 186; *Thomas* v. *G. B. S. Brewing Co.*, 102 Md. 417; *Engler* v. *Garrett*, 100 Md. 387; *Northern Central Railway Co.* v. *Canton Co.*, 30 Md. 352, 353; *Waters* v. *Wambach*, 140 Md. 252; *Green* v. *Early*, 39 Md. 223; *Ohio Pail Co.* v. *Cook*, 222 Pa. St. 487; *Dold Packing Co.* v. *Ober & Sons Co.*, 71 Md. 155; *Crippen* v. *Morrison*, 13 Mich. 23; *Coleman* v. *Lewis*, 27 Pa. 291; *Hagthorp* v. *Hook*, 1 G. & J. 270, 301; 39 Cyc. 1648, 1651.

The transfer to the News Publishing Company was not made within the time named, but the vendor and the vendee extended the period to January 15th, 1923, and on January 17th, 1923, the deed was delivered and recorded. As has been stated, the appellant had nothing left of its former property save the privilege of removal within a limited period of the machinery and equipment so conditionally exccepted. The appellee did not attempt a removal, but on January 9th, 1923, a written contract was entered into by the Western Maryland Dairy with the Maryland Wrecking and Equipment Company for the sale to the company of all the equipment and personal property then owned by the seller and then located in designated buildings on the block bounded by Center, Courtland and Hamilton Streets, and Hargrove Alley, except (a) so much thereof as was a part of the buildings passing with the property and, particularly, all lighting, plumbing and heating equipment, including one marked boiler, elevators and motors for operating the same; electrical switches, switchboards and connections located in the garage, equipment, supplies and tools contained in the carpenter shop, and (b) electrical meters or other property owned by any one whatsoever other than the seller.

The sale was made without any guarantees on the part of the seller and upon the express condition that the sold equipment and personal property should be removed from the premises prior to January 15th, 1923, and without damage to the premises.

The Maryland Wrecking and Equipment Company paid the contract price of fifteen hundred dollars for the property

on the day the contract was executed. On the same day, the Maryland Wrecking and Equipment Company, by a contract in writing of that date, sold and transferred "all of its right, title, interest and estate in and to" the contract with the Western Maryland Dairy, unto the appellee, H. Klaff, trading as H. Klaff and Company, and agreed that the chattels in the contract mentioned should be delivered on or before April 1st, 1923.

Although the Maryland Wrecking and Equipment Company had actually moved some of its equipment to the premises four days prior to its contract with the appellant, it was not until the 9th or 10th of January that it took possession of a little office in one of the buildings, where it received its mail; put up a small sign, bearing its name, over the letter box, and, from this date, its officers and employees had access to the buildings for the purpose of removing the material bought.

The Maryland Wrecking and Equipment Company did not remove the property purchased within the period limited by the contract.

The evidence was conflicting, but the proof on the part of the appellees was to the effect that, by reason of fire in one of the boilers, and of ammonia fumes in the basement, where practically all the chattels purchased were located, and of some horses in the stable, the Maryland Wrecking and Equipment Company could not begin to remove the chattels purchased before February 1st; and then were not able to work in the boiler room, and that the Western Maryland Dairy was responsible for these conditions.

On February 1st a foreman with six men, all employees of the Maryland Wrecking and Equipment Company, began to remove the cooling tower which, with other purchased property, was shipped to H. Klaff and Company.

The work of taking down and carrying away the material continued without interruption until about February 10th, when the George A. Fuller Company, acting for the News Publishing Company, dug holes for soil soundings in front of the boilers, making it impossible to remove them, and the

workmen of the Maryland Wrecking and Equipment Company were put to work in a different part of the basement.

On February 16th the News Publishing Company sent word to the foreman that all work must stop, on the ground that the News Publishing Company, since January 15th, was the owner of all the property the Maryland Wrecking and Equipment Company was then engaged in removing. On its demand, the last named company received a letter, under date of February 17th, from the News Publishing Company, stating that it had purchased the property and had obtained possession of it on January 17th, 1923, and requesting that an account be rendered of everything which had been taken away subsequent to January 17th; that nothing more be removed, and that the keys to the property be returned by noon, February 17th.

The letter was received on February 17th, and the president of the Maryland Wrecking and Equipment Company took it to the vice president of the Western Maryland Dairy and informed him of the work having been stopped, and was told that the matter would be adjusted in a few days. However, in compliance with the written demand of the News Publishing Company, the six keys for the buildings were delivered to it by the Maryland Wrecking and Equipment Company on February 17th.

Five days after this delivery of the keys, the Maryland Wrecking and Equipment Company received a letter, written at its request by the vice president of the Western Maryland Dairy, explaining that the equipment had been sold by the Western Maryland Dairy to the Maryland Wrecking and Equipment Company and the land and buildings to the News Publishing Company; and that the George A. Fuller Company, which was to erect the new building, proposed, in order to avoid the delay which would result in one contractor "wrecking" the equipment and another the buildings, that the Western Maryland Dairy would sell the equipment to the Maryland Wrecking and Equipment Company, as the George A. Fuller Company would engage it to "wreck" the buildings.

This letter further asserted that the Western Maryland Dairy could have held possession of the buildings until there would have been no equipment on the day the Western Maryland Dairy was under legal obligation to put the News Publishing Company in possession, but this would have worked a prejudicial delay of about thirty·days to the News Publishing Company, and that, when the News Publishing Company understood the situation, it would allow the "wrecking" to go on, but if it desired to have the wrecking of the equipment done at the same time as that of the buildings, the News Publishing Company would be justified in so requiring it to be done.

The situation remained unchanged until February 26th, 1923, when the Maryland Wrecking and Equipment Company, through its attorney, wrote to the Western Maryland Dairy stating that it had been ejected on February 16th by the News Publishing Company, and demanding that the Western Maryland Dairy secure for it the right to enter upon the premises for the purpose of removing the chattels bought.  Again, on March 20th, 1923, the attorney for the Maryland Wrecking and Equipment Company wrote a letter to the Western Maryland Dairy, asserting that his client was ready to re-enter the premises and remove the chattels without delay as soon as advised that it could enter the premises; and at the same time addressed a letter to the News Publishing Company setting up title to the personal property and equipment in the buildings.  In this last letter the statement is made that the Maryland Wrecking and equipment Company had been "in possession of said premises from approximately the 14th day of January, 1923, with the machinery and equipment, for the purpose of removing said chattels from said premises until February 16th, 1923, when it received a written notice" from the News Publishing Company "to vacate said premises and discontinue removing anything therefrom, and several similar verbal requests from your Mr. MacBride.  In accordance with this demand, the possession of said premises was surrendered."  The attention of the News Publishing Company was directed by this letter to the

fact that the Maryland Wrecking and Equipment Company had over twelve hundred dollars of wrecking machinery and equipment on the premises.

The Western Maryland Dairy replied to the communication denying all liability. The News Publishing Company disclaimed all connection with the matter, and permitted the removal of the wrecking tools from the buildings, but the residue of the material in the buildings on February 17th has never been removed, and remains in the same condition.

So far as this appeal is concerned, the salient and controlling facts are that the Maryland Wrecking and Equipment Company was in possession of the premises for the purpose of removing the articles bought prior to the deed to the News Publishing Company, and it continued in possession and in the work of removing the machinery and equipment, after the delivery of the deed, until February 17th. During this period the undisputed proof is that the Western Maryland Dairy, in the language of the president of the Maryland Wrecking and Equipment Company, "recognized this property as the property of the Maryland Wrecking and Equipment Company," "never claimed any of it and never did anything with the property, never took any of it, never used any of it and left it all in the buildings for the Maryland Wrecking and Equipment Company to get."

Here is no appropriation of the property of another, or its destruction, no exercise of dominion over it in defiance of the owner's rights, no withholding the possession from him by the Western Maryland Dairy under an adverse claim of right; and hence no conversion. In the language of this Court in the case of *Merchants Bank* v. *Williams,* 110 Md. 334, 351, 352: "Conversion, in the sense of the law of trover, consists either in the appropriation of the property of another or in its destruction, or in exercising dominion over it in defiance of the owner's rights, or in withholding the possession from him under an adverse claim, and all who aid, command, assist or participate in the commission of such unlawful acts are liable." *Seaboard A. L. Co.* v. *Phillips,* 108 Md. 285, 295; *Thomson* v. *Gortner,* 73 Md. 474, 478.

At the time of the delivery of the deed to the News Publishing Company, the Maryland Wrecking and Equipment Company was in possession of the premises; and, consequently, the grantee took with notice of the rights of the Maryland Wrecking and Equipment Company under its contract. Moreover, the grantor had reserved the right to remove the machinery and equipment, and the grantee had extended the time for removal, and after the end of this extension, and while the buyer was in possession, had permitted the buyer to continue to remove its purchase for more than thirty days after the transfer of the title to the premises. The deed, therefore was not in defiance of the buyer's rights, but subject to them. *Huntington* v. *Herman,* 111 App. Div. 875, 877, 98 N. Y. S. 48, affirmed 188 N. Y. 622.

Much stress was laid on brief and argument by the appellees on the fact that the Western Maryland Dairy had delayed the removal of some of the fixtures by not emptying them of ammonia and of others by keeping the heat in the boiler and horses and wagons in the stable. There is no pretence that after February 1st any of these conditions existed, or that there was any other neglect attributable to the appellant, so as in any manner to interfere with the removal of the property bought. Mere delay in making a full and complete delivery of all the fixtures, which are subsequently wholly taken possession of by the buyer, is not an act of conversion. This is well illustrated by delay in transportation by a public carrier, occasioning loss, but resulting in ultimate delivery. The authorities hold this does not warrant a recovery in trover.

From the nature of the action, if there be no unlawful taking or exercise of dominion over a chattel, a conversion cannot be based upon the mere failure of the defendant to perform with regard to the chattel some affirmative act which he has by contract assumed, or upon a non-feasance or neglect of a legal duty. It would seem that to maintain the action of trover some positive, tortious act is indispensable. *Mulgrave* v. *Ogden,* Cro. Eliz. 219; *Heald* v. *Carey,* 11 C. B. 977; *Severin* v. *Keppel,* 4 Esp. 156; *Forehand* v. *Jones,* 84 Ga.

508; *Way* v. *Dennie*, 174 Mass. 43; *Owen* v. *Lewyer*, 1 Vent. 223; *Bromley* v. *Coxwell*, 2 B. & P. 438; *Rushworth* v. *Taylor*, 3 Q. B. 699; *Bowlin* v. *Nye*, 10 Cush. (Mass.) 416, 418; *Robinson* v. *Austin*, 2 Gray (Mass.) 564; 28 *Am. & Eng. Ency. of Law* (2nd ed.), 682.

Furthermore, whatever occurred after February 1st could not constitute trover by the appellant. After January 17th, the grantee held the deed and, subject to the rights of the Maryland Wrecking and Equipment Company, had the actual or constructive possession of the property; and after February 1st, the Maryland Wrecking and Equipment Company had complete control for removal so far as the appellant could give it. The alleged conversion took place about February 16th, when the appellant neither took nor had actual or constructive possession of the chattels. It must have had one or the other to be guilty of a conversion. 38 *Cyc.* 2019; *Tufts* v. *Park*, 194 Pa. St. 79, 44 Atl. 1079; *Huntington* v. *Herrman*, 188 N. Y. 622, 81 N. E. 1166; *O'Dwyer* v. *Verdon*, 115 App. Div. 37, 39, 40, 190 N. Y. 505, 83 N. E. 1128.

There is no denial that, after the News Publishing Company declined, on February 16th, to let the Maryland Wrecking and Equipment Company remove any more of the articles, demand was made for the chattels of the appellant, but the appellant could not comply, or refuse to comply, with this demand, as it did not have possession of them. The Maryland Wrecking and Equipment Company had surrendered possession with the keys to the News Publishing Company on February 17th.

It is true, conversion may be either direct or constructive. It may, therefore, be proved directly or by inference. When the plaintiff fails in proving an actual conversion, it will be necessary for him to give evidence of a demand and refusal having been made at a time when the defendant had the power to give up the goods. Demand and refusal are only evidence of a prior conversion, which may be explained and rebutted by evidence to the contrary. But there cannot be an effective demand and refusal, unless the defendant had at the time both the possession of the goods and the means of

delivering them up. Unless these conditions exist at the time of the demand and refusal, it was not within the power of the party to deliver up or detain the goods demanded.

Again, there must usually be evidence of an intention on the part of the defendant either to take to himself the property in the goods, or to deprive the plaintiff of some right in them. *Hammond* v. *DuBois,* 131 Md. 116, 151, 153; *Dietus* v. *Fuss,* 8 Md. 148; *Manning* v. *Brown,* 47 Md. 506; *Merchants' Bank* v. *Williams,* 110 Md. 334, 351, 352; *Seaboard A. L. Co.* v. *Phillips,* 108 Md. 285, 295; *Thomson* v. *Gortner,* 73 Md. 474, 478, 479; *Dungan* v. *Mut. Ben. L. Ins. Co.,* 38 Md. 242, 249; *Martin* v. *Lanahan,* 133 Md. 525, 527, 528; *Carter* v. *Hughes,* 133 Md. 473.

On the indisputable proof, there can be no recovery in trover by the appellees, and the lower court was in error in not so instructing the jury. It is unnecessary to discuss the other questions raised.

> *Judgment reversed without new trial, with costs to appellant.*