MARYLAND WRECKING AND EQUIPMENT COMPANY *vs.* NEWS PUBLISHING COMPANY.

*Fixtures—Reservation on Sale of Land—Limited Time for Removal—Evidence—Recross-Examination of Witness—Discretion of Court.*

On an issue as to the right of plaintiff to remove certain machinery and equipment from a building purchased by defendant, *held* that, it appearing that plaintiff's president was occupying the building without defendant's permission, it was immaterial to whom certain keys of the building belonged, and there was no prejudicial error in excluding a question asked a witness in that regard.                                    p. 565

On an issue as to the right of plaintiff to remove certain machinery and equipment sold to him by one who had previously sold the building to defendant, the question whether the machinery and equipment in question were loose or attached to the building was pertinent and material.                                    p. 566

The trial court has discretion as to the admission, on recross-examination, of testimony relating to the subject matter of the examination in chief.                                    p. 566

Where, on the sale of a building, the vendor reserved the right to remove fixtures therein, provided the removal was effected before the transfer of the building, and subsequently he sold the fixtures to another, who, however, failed to remove them before the transfer of the building, the latter lost all rights to the fixtures, which passed to the vendee of the building as part of the realty.                                    pp. 566-568

*Decided June 11th, 1925.*

Appeal from the Court of Common . Pleas of Baltimore City (SYMINGTON, J.).

Action by the Maryland Wrecking and Equipment Company against the News Publishing Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Myer Rosenbush* and *Joseph Bernstein,* with whom were *Rosenbush & Bernstein* on the brief, for the appellant.

*Redmond C. Stewart* and *William L. Henderson,* with whom were *Stewart & Pearre* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This case grows out of the refusal of the defendant, the News Publishing Company, a corporation of Baltimore City, to permit the plaintiff, the Maryland Wrecking and Equipment Company, also a Baltimore corporation, to remove from a building in said city, which the defendant had purchased from the Western Maryland Dairy, certain machinery and equipment bought by plaintiff from that company under a conditional contract. The building was sold by an agreement dated March 14th, 1922, but was not conveyed until January 13th, 1923. The deed was recorded on January 17th, 1923.

By the agreement the title was to be transferred "at any time on or before the 31st day of December, 1922, at the option of the vendor upon giving thirty days' written notice thereof." In the agreement the vendor "reserves the right to remove prior to day of transfer from the property so sold all machinery and equipment located therein."

The deed conveyed the property by description and contained the clause: "Together with the buildings and improvements thereupon and the rights, alleys, ways, waters,

privileges, appurtenances, and advantages to the same belonging or in anywise appertaining."

It does not appear in the record of the present case, but is admitted in the briefs, that, at the request of the dairy company in December, 1922, the time of transfer of the real estate by the dairy company to the defendants was extended to January 15th, 1923.

On January 9th, 1923, without the knowledge of the defendant, the dairy company executed a contract of sale whereby, in consideration of fifteen hundred dollars, it sold to the plaintiff "all of the equipment and personal property now owned by the said Western Maryland Dairy, Incorporated, and located in its buildings bounded by Centre, Courtland and Hamilton Streets and Hargrove Alley, in the city of Baltimore, and State of Maryland, and known as its stable, ice cream building, power plant and garage, the same being all of the equipment and personal property owned by the said Western Maryland Dairy, Incorporated, and located in said buildings at this date," with certain exceptions not involved in this controversy, "said sale being made without any guarantees on the part of the Western Maryland Dairy, Incorporated, whatsoever, and upon the express condition the said equipment and personal property shall be removed from the premises prior to the fifteenth day of January, 1923, and without damage to said premises."

According to the testimony of John E. Smith, president of the plaintiff corporation, his company was delayed in its operations of removing said equipment by the following circumstances: there was a large quantity of dairyman's equipment stored on almost every floor of the ice cream building, belonging to a man by the name of Kaestner, that being the main structure, and the same building in which the ice plant and all the machinery was located which plaintiff had purchased from the dairy company; this condition continued till the 12th or 13th of February, 1923. Witness on the 8th day of January had shipped a lot of wrecking tools and

Md.]

equipment from Washington to this job; he put it in the ice-cream building and to secure it bought locks and keys and put the locks on the different doors that were open.  He tried to begin moving material on the 9th of January but "could not break any connection"; there was steam in the boilers and steam in the pipes; the plant was practically in operation, the steam being in boilers purchased by plaintiff and the boilers connected with the ice making plant.  It was impossible to take the boilers down with steam in them and there was steam in the piping throughout the building; there was also ammonia circulating through the pipes.  That on January 15th there was still fire in one boiler; on January 17th witness found the dairy company men drawing the ammonia from the refrigerating system and the condition was such where the machinery was located that a man could not go down there and breathe.  The ammonia fumes continued until about the first of February.  Between January 17th and the first or second of February, the dairy company had employees there removing stuff from the premises; witness worked there until the 17th of February.  On the 16th of February, having been informed by his foreman that Mr. MacBride (representing the defendant) had been down to the building and ordered him to stop work, witness called up Mr. MacBride, who asked witness to come to see him the next day.  At that interview Mr. MacBride asked witness what right he had to remove the machinery out of the plant and witness replied that his company had bought it; Mac-Bride asked him if he didn't know that property belonged to the News Company; witness replied that he did not, and MacBride told him he would have to stop that work.  Witness said that he would have to see Mr. Harrison, the man from whom he bought the machinery.  He told Mr. Harrison what MacBride had said.  Witness then came back to MacBride and told him he could not vacate the premises without a written order, whereupon MacBride gave him a written demand order to get off the premises.

The order was as follows:

"Baltimore, Feb. 16, 1923.

"Dear Sir:

"It having been brought to the attention of the News Publishing Company that you are occupying some little temporary office on its property at the southeast corner of Courtland and Centre Streets, and that you are removing machinery, a boiler and other articles from the property, you are hereby notified that the News Publishing Company purchased this property and obtained possession of it on the 17th of January, 1923, and that nothing has properly been taken off the property since that time, and a statement of what has been taken between the 17th of January and this date is requested, and you are notified to remove nothing from the property hereafter.

"Very truly yours,
"A. E. MacBride,
"For News Publishing Company."

MacBride also demanded the keys, which witness gave him and took a receipt. Witness had had signs painted on the Courtland Street brick wall and on the Centre Street door, on the 10th or 12th of January, 1923. The sign on the brick wall facing St. Paul Place read, "Maryland Wrecking and Equipment Company" and was at least a yard long and could be seen across St. Paul Place. The sign on the glass door in Centre Street side read, "Office of the Maryland Wrecking and Equipment Company."

It appears from the testimony of MacBride, and is not contradicted, that his first knowledge of the signs referred to or the presence of the plaintiff's representatives on the premises was on the 10th or 12th of February, when, on seeing these things, he asked a man whom he saw there what he was doing there, and being told that Mr. Smith was the head of the plaintiff company and that they were there for certain wrecking purposes, requested the man to have Mr. Smith come to see him.

It seems to be conceded, or at any rate not denied, that defendant had no knowledge of the sale of the equipment to plaintiff prior to February 12th, and that plaintiff prior to that date had no knowledge of the sale of the real estate to defendant, also that no one representing the defendant ever gave plaintiff permission to occupy the premises either before or after the date of transfer.

After the notice to vacate given by defendant to plaintiff, and the failure of the latter to get any satisfaction from either the defendant or the dairy company, an action of trover was instituted against them jointly, which resulted in a directed verdict withdrawing the case from the jury as to the present defendant, as to whom plaintiff took a *non pros.*, and a verdict and judgment in favor of the plaintiff as to the dairy company, from which judgment the dairy company appealed, and on the appeal the judgment was reversed without a new trial. The case was decided at the April Term, 1924, and is reported in 146 Md. 318. Thereupon the present suit was brought.

The *narr.* contains two counts, one in trover and the other in case. The suit resulted in a directed verdict in favor of the defendant. From the judgment on that verdict this appeal was taken.

There are three bills of exception, two to rulings on evidence and one to the granting of the prayer for a directed verdict.

The first exception was to the sustaining of an objection to the following question asked MacBride, plaintiff's witness: "At the time Mr. Smith delivered the keys to you, did he tell you who the keys belonged to"? The court suggested that plaintiff could prove that by Smith; counsel for plaintiff seemed to acquiesce in this suggestion, as he replied, "All right, but I thought probably he had told Mr. MacBride something of that sort." However, counsel reserved an exception.

It seems to us entirely immaterial to whom the keys belonged, if, as it appears, Smith was occupying the premises

without the knowledge or permission of the defendant. At any rate there was no prejudicial error.

The second exception was to permitting the witness Mac-Bride to answer the following question on re-cross examination: "You spoke of inspecting the property, and I would like to ask you whether the contents of the building consisted of articles loose in the building or whether the equipment in the building was attached to the building"? The objections urged were " in the first place, the question is entirely too broad; and in the second place it certainly is not relevant to the question on re-direct examination." The court recognized that the question should properly have been asked on the original cross-examination, but exercised its discretion to permit the question to be asked out of order. The witness answered: "The machinery and equipment was all attached to the buildings. The various pipes and machinery fastened to bases on which they rest." The question was pertinent and material and the trial court was well within the proper exercise of its discretion in permitting this testimony to be brought out, as it related to the subject matter of the examination in chief.

We come now to the only matter of serious importance, the withdrawal of the case from the jury, which is the subject of the third exception.

In *Western Maryland Dairy, Inc., v. Maryland Wrecking and Equipment Co., supra,* it was held that there was no absolute agreement by the vendor and vendee for a severance of the fixtures, but a contingent one, creating a right which was dependent upon the condition precedent that the physical detachment and removal of the fixtures from the premises must be made before a named day, and that as the condition precedent was not fulfilled by the severance and removal of the fixtures and personal property by the day specified, or by a later date as agreed or as enlarged by waiver, the fixtures retain their nature as part of the realty and pass to the vendee; and that "it is a result of this agreement that the fixtures would not become, as against the ven-

dee, a personal chattel until there was an actual severance and removal."

That is conclusive of the present appeal, as the uncontradicted testimony shows that there remained only fixtures at the time plaintiff was ordered out.

But the plaintiff has entirely misconceived another expression of the court in the case, viz: "As the exception of the fixtures was an express condition of its purchase, the News Publishing Company was fully bound by all the legal consequences * * *. At the time of the delivery of the deed to the News Publishing Company the Maryland Wrecking and Equipment Company was in possession of the premises; and, consequently, the grantee took with notice of the rights of the Maryland Wrecking and Equipment Company under the contract. Moreover, the grantor had reserved the right to remove the machinery and equipment and the grantee had extended the time for removal and, after the end of this extension and while the buyer was in possession, had permitted the buyer to continue to remove its purchases for more than thirty days after the transfer of the title to the premises. The deed therefore was not in defiance of the buyer's rights, but subject to them."

The difficulty is that counsel apparently overlooked what was before the court for decision in the case. The court was not considering at all any possible liability on the part of the News Publishing Company. No such question was involved. But it was demonstrating that the defendant in that case, the dairy company, in transferring the real estate, had done nothing to the prejudice of the plaintiff, in that (a) it had expressly limited the time within which the fixtures could be removed; (b) it had put plaintiff in possession, so that the grantee took with notice of any rights plaintiff might have, and therefore the dairy company had concealed nothing; (c) it had not only reserved the right to remove the fixtures for the time within which it stipulated that plaintiff should remove them, but had secured from the grantee an extension of the time, and even after the end of

this extension the grantee for more than thirty days after the transfer of the title to the premises had not exercised its right to stop the removal of the fixtures. It followed that the deed was not in defiance of the buyer's rights, but subject to them.

The expression relied on by counsel for plaintiff could mean nothing else in view of the preceding statement that, by reason of the failure of the plaintiff to remove the fixtures within the time expressly limited, they retained their nature as part of the realty and passed to the vendee.

The suit in that case was in trover and all that we decided was that *that* action would not lie. We did not hold that if the dairy company had wrongfully impeded the plaintiff and made it impossible for it to get the benefit of its purchase, plaintiff could not have recovered from the dairy company in a proper action.

But the present defendant was in no manner responsible for that wrong, nor charged with notice of it. True it took the premises subject to all rights which plaintiff had *under its contract* with the dairy company; but not subject to the liability incurred by that company by reason of its wrongful defeat of such rights. So far as this defendant is concerned, all rights of plaintiff under that contract ceased on the 15th day of January, 1923, and after that date it was a trespasser.

It is a necessary consequence of the decision, in the former case, that an action of trover did not lie against the dairy company, that no action could lie against this defendant.

*Judgment affirmed, with costs to appellee.*