EDWIN M. WILMER, Substituted Trustee,

*vs.*

PHIL. & READING COAL & IRON COMPANY.

*Equity: pleading; exhibits; written instruments upon which
equity of bill rests. Fiduciaries and cestui que trustent:
estoppel. Lunatics. Lands in other States.*

Where the facts upon which the complainant bases his claim
for an injunction depend upon written instruments, the latter
must be filed with the bill as exhibits.                    p. 669

If several co-tenants unite in granting a lease of lands for the
mining of coal, one of them who has received his share or pro-
portion of the proceeds therefrom .can not recover them again,
merely because of his' having failed to unite in the lease.

p. 672

In general, the same principle applies to the committee or
trustee of a *non compos,* who, although he has received the pro-
portionate share due his ward, had failed to join in the lease,
or has executed the lease defectively.                      p. 672

Where one party occupies two positions of trust for the same
person, money received by him for his ward or *cestui que trust*
is, in the absence of any evidence to the contrary, presumably
received in the proper capacity; and if the money was, in fact,
applied to the use of the *cestui que trust* or ward, although it
was received by the fiduciary in the wrong capacity, a court of
equity may adjust and correct the error, so as to protect all
parties entitled to be protected.                           p. 677

Where a court of equity, having jurisdiction of the parties
and subject-matter, is satisfied that a contract was executed
for a lunatic by his committee, or acquiesced in by his trustee,
and the court would have ratified such action had it been neces-
sary, and is further satisfied that the *cestui que trust* received

the benefit of what he was entitled to under the contract, it may ratify the contract, *nunc pro tunc,* especially when the committee and trustee was one and the same person.     p. 674

How far a committee *de lunatico,* appointed in this State, may exercise power over his property in another State, depends upon the laws of that State.                         p 675

*Decided June 26th, 1917.*

Appeal from the Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER and STOCKBRIDGE, JJ.

*David Ash,* for the appellant.

*Ralph Robinson,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer to and dismissing an amended bill of complaint, filed by the appellant against the appellee. The plaintiff alleges that he is the duly substituted trustee under the will of Jane H. Nicholas for the purposes of the trust therein created, by an order of Circuit Court No. 2 of Baltimore City, passed the 12th day of July, 1913, and that the defendant (appellee) is a foreign corporation "engaged in the business of mining, transporting and selling coal and other mine products with offices located in the City of Baltimore, and transacting business in said city"; that by the terms of the will of Jane H. Nicholas, who was the owner of a one-sixth fee simple interest in certain land situated in Schuylkill County, Pennsylvania, described in an indenture, a copy of which is filed, her estate was divided into six equal parts, one of which devolved

upon the plaintiff as such substituted trustee for the benefit
of Philip N. Nicholas, for the term of his natural life, he
being still living; that the signature of George C. Nicholas,
the alleged committee of Philip N. Nicholas to said inden-
ture by his alleged attorney, was unauthorized and that it
was incompetent for said alleged committee so to lease said
land, without leave of the Court first had and obtained.

It is then alleged that by the terms of the will an undivided
fee simple interest in said land had devolved upon the plain-
tiff, as tenant in common with certain other co-tenants there-
in, the defendant being one of them, that the defendant had
occupied said land from the first of January, 1890, the time
of the death of said Jane H. Nicholas or prior thereto, to the
present time, mining the same and since said date opened new
mines thereon without the leave of the plaintiff or any pre-
decessor of his in title, and received the rents, issues and
profits thereof, which amounted to a great sum of money
after the deduction of all necessary expenses in the operation
of the mines, and used the same for the purposes of its min-
ing business, and for the erection and occupation of works
and houses thereon, and has encroached upon the rights of
the plaintiff, its co-tenant in the premises, as herein more
particularly set forth, without leave, license or warrant in
law and without any contract or lease with or on behalf of
the plaintiff or any predecessor of him in said trust; that the
defendant has been and still is mining large quantities of coal
and other products of said land from mines already opened
prior to the first of January, 1890, and prior to the date of
the alleged indenture, and from mines opened subsequent to
said dates, etc.

It is further alleged that defendant is still using and other-
wise disposing of the coal and products of mining taken from
said land, as well as the land itself, and has erected buildings,
tracks and machinery thereon, and has otherwise wrongfully
used said land continuously, year after year, to the present
time, "to the exclusion of your orator from his rights therein
and in utter disregard of said rights, to the great loss and

damage of and to said trust estate, and the depletion of the
coal and other mineral deposits upon said land, and the value
of said land, and has unwarrantably leased and undertaken
to lease portions of said land for other purposes than mining
to strangers to this plaintiff, who have no privity of contract
with your orator." It is alleged that plaintiff had demanded
an accounting but the defendant had failed to account to him,
or any predecessor of him in the premises for any part of
the rents, issues or profits of said land or for any matter of
account whatsoever, since the first of January, 1890. The
bill prays for: (a) an accounting; (b) that defendant be
decreed to pay the plaintiff all sums found to be due on said
accounting; (c) that the defendant be enjoined "from fur-
ther excluding your orator from said land and from further
interfering with the rights of your orator in said land held
by this trustee in trust as aforesaid, and from mining or re-
moving any coal or other property from said land; and from
further occupying said land adversely to the interests of your
orator"; (d) that defendant be adjudged to pay to the plain-
tiff such damages as he may have sustained from the wrong-
ful acts of the defendant, and (e) for further relief.

As there were not filed with the bill copies of the order
of Court, by which the plaintiff alleges he was appointed,
and of the will of Jane H. Nicholas, we have no information
in the record of their contents beyond the allegations in the
bill. The judge of the lower Court could not properly have
granted the injunction prayed for without having those ex-
hibits before him. *Miller's Equity Procedure*, sec. 582, pp.
689-690; *Miller v. Ballo. Co. Marble Co.*, 52 Md. 642, 646.
Under the circumstances of this case it was necessary to have
before the Court a copy of the will, as the Court is not author-
ized to accept the construction placed on it by the plaintiff—
especially as the copy of the lease filed with the bill shows
that it was signed and executed by "George C. Nicholas, com-
mittee of the estate of Philip Norbourne Nicholas."

The amended bill seems to proceed on the theory that the
defendant and the plaintiff are tenants in common. In addi-

tion to what we have quoted it is alleged that "excepting as arising from said cotenancy, no contractual rights or privity exist or have existed between him, or his predecessor in title, and said defendant." It is contended by the appellee that the bill in effect alleges an ouster.

The "indenture" referred to—marked "Plaintiff's Exhibit A," is a lease dated January 1st, 1900, to the appellee by a large number of persons, including "George C. Nicholas, committee of the estate of Philip Norbourne Nicholas, by his attorney-in-fact, Cumberland Dugan." Edwin M. Wilmer individually is also one of the lessors. By that lease the lessors undertook to grant, demise and let to the defendant "the exclusive right and privilege of digging, mining and carrying away anthracite coal wholly at their own cost and expense in and from their interest (being two hundred and eighty-three five hundred and seventy-sixths part) of, in and to" certain tracts in Schuylkill County, Pennsylvania, with the right to deposit the slate, dirt and refuse thereon, for the term of fifteen years, from the 1st day of January, 1899, to the 31st day of December, 1913. It is signed, sealed and acknowledged, and when executed by attorneys in fact, it purports to be executed under letters of attorney intended to be recorded in Schuylkill County, Pa.

Although according to the bill the appellant was not appointed substituted trustee until the 12th of July, 1913, and he was individually a party to that lease, the first prayer of the bill reads as follows: "(a) That said The Philadelphia and Reading Coal and Iron Company, defendant, may answer this bill, and discover and set forth in detail the amount of tonnages of coal and other products mined at, on and from the land aforesaid, by, on or on account of or for the benefit of said defendant, as well as to discover and set forth, in detail, the tonnage of each and every grade of coal and other product mined as aforesaid, by said defendant, monthly since the month of January, in the year 1890; and to set forth in detail all sums by it received from said coal and other products, and each of them, from or on account of sales, or in any

other manner whatsoever from and since the first day of January, 1890, as well as all profits by it in any way made during the said time on said land, and the products thereof, and each of them, and account with your orator for all your orator's interest in the rents, issues and profits of said land, so occupied as aforesaid, by said defendant, from and since the first day of January, in the year 1890, to the present time." Then follow the prayers for a decree requiring the defendant to pay over all sums found to be due on said accounting, for an injunction, for damages and for general relief.

The argument of the case was devoted mainly to the question whether relief should be granted to the appellant in this State, inasmuch as the land in question is in Pennsylvania, the title to which the defendant alleges is involved and is really the main issue. It would probably require a large force of clerks to furnish the information demanded by the prayer quoted above, and, although it is true that the appellant was not appointed trustee until July, 1913, he was one of the lessors in the lease referred to, and presumably had every opportunity to know what was received by the lessors, and what each was entitled to. The lease contains many provisions for the protection of the lessors, amongst others one requiring the company to furnish them on or before the 10th of each month a correct statement of the number of tons of coal mined and shipped from the premises during the previous month, others permitting them, their agents, engineers and inspectors, at all times to enter the mines, providing for distress for rent in arrears, for re-entry, etc., etc.

While there is a general denial of the defendant having obtained any rights under the lease from the plaintiff or "any predecessor of his in title," it is not alleged or contended that Philip N. Nicholas did not get the full benefit of what he was entitled to. It would be a monstrous injustice to hold the appellee responsible for the share coming to Philip N. Nicholas during the many years the defendant was oper-

ating under the lease, if in fact he received the benefit of it. Can it be seriously contended that if a number of tenants in common make such a lease as this, and one co-tenant does not join in it, but accepts his share, that he could subsequently recover it in a court of equity on the ground that he had not united in the lease? No one could pretend that one capable of acting in his own right could thus bring reproach upon the administration of justice, and would a court of equity, having charge either of a committee of a lunatic appointed by it, of or a trustee acting for such a person, or both, be required to allow another recovery of such share, although it was actually received and used for the benefit of the ward of the Court, merely because there was some defect in the execution of the instrument? Of course not; on the contrary, it would be the manifest duty of the Court to protect a lessee from the attempt of a trustee appointed by it to again collect the amounts already paid, if the ward of the Court, whether a lunatic or a mere beneficiary under a trust, had in fact already had the benefit of the amount due, even if it was paid through a committee and should have been through the trustee, unless there was something more shown than is in this bill.

Although it is not before us on this demurrer, take, for illustration, what the learned Judge below said in his opinion on the demurrer to the original bill. While he did not feel authorized to consider them in passing on the demurrer, he spoke of certain facts which the counsel for the parties agreed upon in the course of the argument, one of which was that the same person who was appointed to hold the interest of Philip N. Nicholas as committee was trustee under the will: "That he never acted as trustee, but that under the title of committee only he executed a mining lease to the defendant, and during the twenty years of occupancy by the lessee received, as committee only, a regular accounting of rents and profits under the lease, from all three-seventy-seconds in which the lunatic had an interest." If that was

the case, is there any principle of law, equity or good morals which would permit the appellant to again collect from the appellee the share of Philip N. Nicholas, if it be conceded that his trustee did not collect it *as such*, but did as committee? It may very properly be urged that the bill does not so admit, but it nowhere alleges that the appellee has not paid to someone, and only refers to the appellant and "his predecessor in title" as not receiving it, by which we understand the bill to mean that plaintiff's predecessor *as such* did not unite in the lease or receive the money. In *Wilmer* v. *Phila. & Reading C. & I. Co.*, 124 Md. 599, the Coal & Iron Co. filed a bill of interpleader against the present appellant and The Baltimore Trust Company as committee of Philip N. Nicholas. The Trust Company had been substituted as such committee. The subject-matter of the bill was a fund derived from the interest in the coal lands owned by Philip N. Nicholas as one of the heirs of C. G. Nicholas, who was a party to the lease, and Wilmer, trustee, sought to bring into that case the interest of Philip N. Nicholas in those lands under his mother's will. Wilmer there contended that the Coal & Iron Co. was not an indifferent stakeholder, because it "has paid the revenue since the death of C. G. Nicholas to someone," and it was nowhere suggested that all that was due had not been paid to someone for the benefit of Philip N. Nicholas. The Court held, however, that only the fund in the hands of the plaintiff could be considered under the bill of interpleader. In the absence of some allegation to the contrary, it may be fairly inferred that Philip N. Nicholas got the benefit of all he was entitled to, as Cumberland Dugan was not only the attorney-in-fact for George C. Nicholas, committee, but for the other lessors in that lease, and was a lessor himself. In the interpleader case in 124 Md. 599, a letter from Wilmer, trustee, addressed to the Coal & Iron Co. was filed, in which it was stated that George C. Nicholas, surviving trustee of Philip N. Nicholas under the will of Jane H. Nicholas, had been removed and that he had been appointed trustee in his place. That letter bears

the same date as the order appointing him, and although, as we have already pointed out, the order was not filed with the bill, as it should have been, we can not be required to ignore the fact which appears in the records of this Court in a case to which the present appellant and appellee were parties, and in which the very lease in question was involved. Indeed, in this record there immediately follows the amended bill of complaint a statement which is said to give the purport and substance of Exhibit A, and in it reference is made to the indenture of lease printed in the record of this Court in the case in 124 Md., thus referring us to that record, and, moreover, we assume that the statement was filed with the bill, as otherwise it ought not to have been in this record. Beyond all that, there is in the record in this case a copy of the said indenture which shows the necessity of explaining such matters as we have referred to.

Assuming, then, that George C. Nicholas was both trustee under the will for and committee of Philip N. Nicholas, it can not be doubted that as he executed the lease as committee he must be held to have acquiesced in it, even if it be conceded that he ought to have executed it as trustee, and not as committee, or was not duly authorized to execute it as committee. The Court certainly had the power to ratify his act as such trustee, and presumably he duly accounted for the funds received by him, as there is no allegation or suggestion to the contrary. If the Court having jurisdiction of the trust, which is the Court in which the bill was filed, is satisfied that it would have ratified the action of the trustee if it was necessary for the trustee to have that done, and that the *cestui que trust* got the benefit of what he was entitled to, it could and doubtless would, even now, do so.

It is said in 38 *Cyc.* 106, in the article on "Tenancy in Common," written by the learned attorney for the appellant, that "Tenants in common, being owners of several interests, may ratify the acts of each other or acquiesce therein; and generally such ratification or acquiescence with full knowledge of material facts is effective, and after such ratification

or acquiescence the ratifying parties and their respective grantees are estopped from denying the effect thereof." See also 38 *Cyc.* 104, 7 R. C. L. 876, 877, and note to *DuBelle* v. *Miller,* Ann. Cas. 1913 D. 1165.

By reason of the failure of the appellant to file the will, we can not determine the powers of the trustee under it, but the powers of a court of equity, under sections 114 to 123 of Article 16 of the Code, in reference to persons *non compotes mentis,* are very broad and comprehensive, although a sale, lease or mortgage of the estate of a person *non compos mentis* by his committee is safeguarded by a number of provisions for his protection. The bill does not in terms allege that the Court did not authorize the committee to make the lease, and if it did the informal execution of it, or failure to recite the fact in the lease, would not justify a second recovery of the rents and profits. It is true that the bill alleges that the signature of George C. Nicholas, etc., "is entirely unauthorized," but why it is so we are not informed by the bill. How far a committee appointed in this State can exercise powers over property in Pennsylvania must depend upon the laws and decisions of that State, and it would be for the courts of that State to determine the effect of such a lease as this, signed by a committee or his attorney in fact, if he was both trustee and committee for Philip N. Nicholas, as he seems to have been. It would seem, therefore, to be clear that the title of this property, under the lease, is so directly involved that a Court of this State could not properly determine the questions which would be necessary in order to do justice to the parties. The question of accounting is not the primary one, for if the lease be held to be valid or the rights of the defendant protected under the theory suggested by us above, or for other reasons satisfactory to the Pennsylvania courts, there will be no occasion for an accounting under this bill.

We have thus only discussed the demurrer in connection with the lease, for although the bill undertakes to go back

to January 1st, 1890—nine years before the lease was to operate, and over twenty-five years before the original bill was filed—without something more definite as to what transpired between the 1st of January, 1890, and the 1st of January, 1899, when the lease began to operate, than we find in this bill, a court of equity would not be justified in permitting a trustee under its jurisdiction to thus delve into the past—much less in granting relief to such a stale claim. It is true that the plaintiff was not appointed substituted trustee until a little over two years before the original bill was filed, but the lease filed as an exhibit shows that he was one of the lessors of the land, and presumably he was familiar with the facts, and yet he makes no explanation of his own delay of two years, or of the inaction of nearly a quarter of a century by his predecessor. If his predecessor ought to have received the share in question as trustee, and did not receive it in that capacity, but did receive it as committee, and properly accounted for it, what we have said is sufficient to show that in our opinion the plaintiff should not be permitted to recover, and if there was no such receipt, or the appellant could not ascertain whether or not there was, he should have so stated in his bill. Frankness in a court of equity demanded at least that much.

So as to what, if anything, became due between the time of the expiration of the lease, on December 31st, 1913, and the filing of the bill, we are not sufficiently informed how the defendant was holding, but the allegations are of the most general and indefinite character. We do know from the case in 124 Maryland that The Baltimore Trust Company was at some time appointed committee of Philip N. Nicholas, but whether his share, or any part of it, has been paid to that company as committee, or to anyone else, we are not informed by the bill, although in 124 Maryland, in his cross-bill, the appellant alleged that the Trust Company, "under color of its alleged committeeship, has wrongfully received and accepted money due to him as trustee." Frankness is demanded in all cases, but peculiarly so in one such as this,

where there is enough before the Court to inform it that a trustee and a committee were named for the same person, and that at least for a large portion of the time the same person was named as both. It is not enough for one who has been substituted for one of the places to rely on general allegations as to himself and his predecessor, especially as when one person occupies two positions of trust for the same person, and receives money for his *cestui que trust* or ward, presumably he receives it in the proper capacity, in the absence of something to the contrary, and if he did not, but applied it to the use of his *cestui que trust* or ward, a court of equity could readily adjust and correct the error, so as to protect all parties entitled to protection.

That, under the circumstances, an injunction should not have been granted would seem clear. There is only involved a comparatively small interest in the land. To enjoin the defendant from prosecuting its business on that land might do great injustice, and there does not appear in the bill any good ground for such a drastic proceeding. The remedy by injunction in favor of a co-tenant is sparingly exercised. 38 *Cyc.* 97-98; 17 *Amer. and Eng. Ency. of Law,* 705. If the contention of the appellee be correct that the bill alleges an ouster, there would be still less ground for the relief asked, but we have not thought it necessary to discuss that question, as we are satisfied that the plaintiff is not entitled to relief under this bill, for the reasons we have stated.

> *Decree affirmed, the appellant, individually,*
> *to pay the costs.*