# FARMERS STATE BANK OF KNOX, NORTH DAKOTA, a Corporation, Respondent, v. C. H. BOWLES and Eli Bowles, Defendants. ELI BOWLES, Appellant.

(40 A.L.R. 377, 203 N. W. 903.)

**Estoppel — mortgagor, sued for conversion, not estopped by covenants from showing that property never existed.**

In an action by the mortgagee against the mortgagor for the conversion of the property described in a chattel mortgage the mortgagor is not estopped by the covenants of ownership and warranty from showing that the property which he is charged with having converted never existed and, that, hence, he could not have converted it.

Opinion filed May 4, 1925.

Estoppel, 21 C. J. § 1 p. 1059 n. 1; § 83 p. 1096 n. 58. Trover and Conversion, 38 Cyc. p. 2008 n. 4, 7, 9; p. 2009 n. 10; p. 2112 n. 25, 26.

Appeal from the District Court of Pierce County, *Buttz,* J.

The defendant Eli Bowles appeals from a judgment and from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Reversed and remanded.

*Campbell & Funke,* for appellant.

The rule is elementary that signatures must be concededly genuine and have some relation, material, to the issues in the case. Cochrane v. National Elev. Co. (N. D.) 127 N. W. 725.

Property converted must belong to another. The assumption and exercise of the right of ownership must be unauthorized. A mortgagor has title and right to possession. It would appear, however, there are cases in which the mortgagor may be held liable as upon conversion in favor of the mortgagee. But an examination will disclose that this is only by affirmative tortious acts with reference to the property and is not upon mere demand and refusal. In this case there is no evidence whatsoever of any affirmative tortious act on the part of defendant.

Note—Estoppel of mortgagor or seller to deny existence of property mortgaged or sold, see annotation in 40 A.L.R. 382.

The only conversion pleaded or attempted to be proven is demand, and refusal. 38 Cyc. 2005, 2061.

The party on whom the demand is made must have the ability to comply therewith. 38 Cyc. 2034, 2038.

A simple claim for conversion is barred. 7 C. J. 402; Lewis v. Shaw, 102 N. Y. Supp. 1012, 19 Am. Bankr. Rep. 866; Crawford v. Bank, 195 U. S. 176.

It is elementary that the mortgagor is estopped from asserting in defense to an action to foreclose a mortgage lien, that he was not, at the time the instrument was made the owner of the property described therein. Bingenheimer Merc. Co. v. Sheck, 195 N. W. 969; Omaha v. Whitney, 94 N. W. 513, 99 N. W. 525.

*Harold B. Nelson,* for respondent.

A mortgagor of chattels is estopped to deny his ownership thereof. 21 C. J. 1069.

The mortgagor will not be allowed to assert, as against the mortgagee, that the mortgage was made in fraud of creditors, that the property mortgaged did not belong to him or that the lien of the mortgage had been terminated by his own wrongful act. 11 C. J. 607, § 310; Woodland Bank v. Duncan, 117 Cal. 472, 49 Pac. 414.

Conforming to the general rule a mortgagor is estopped to assert anything in derogation of the rights which the instrument purports to convey, as that he had no title at the time of executing the mortgage. Adam v. McClintock, 21 N. D. 483, 131 N. W. 394.

Where the mortgagor wrongfully appropriates the mortgaged chattels to his own use he is liable for conversion. 11 C. J. 588, § 283.

An absolute sale, to the exclusion of the rights of the mortgagee, by a mortgagor, who, under the terms of the mortgage, remains in possession of the chattels, works a conversion thereof, for which the mortgagee may maintain trover without demand. Ilfeld v. Zeigler, 91 Pac. 825.

It follows that defendant had no right to withhold from plaintiff the possession of the property belonging to plaintiff, and his act in so doing constituted a conversion thereof. Henry Buggy Co. v. Higham, 7 N. D. 45, 72 N. W. 911.

An absolute sale of the mortgaged property by the mortgagor, or anyone claiming under him, in exclusion of the rights of the mortgagee,

is a conversion of it for which the mortgagee may maintain trover. Jones, Chat. Mortg. § 460; White v. Phelps, 12 N. D. 382; Brown v. Campbell, 24 Pac. 492, 21 Am. St. Rep. 274.

A plea of discharge in bankruptcy does not furnish a defense to a statutory action of trover, brought by a vendor against the bankrupt to recover personal property sold by the former to the latter, with retention of title until payment, possession of which is retained by the purchaser after the discharge in bankruptcy. Smith v. Turner, 141 Ga. 313, 80 S. E. 993; 32 Am. Bankr. Rep. 864.

The disposal of another's property without his knowledge or consent, done intentionally in disregard of what one knows to be his duty, to the other's injury, is a wilfull and malicious injury to property within the meaning of the Bankruptcy Act. Mason v. Sault, 93 Vt. 412, 18 A.L.R. 1426, 108 Atl. 267.

A description of the property which will enable the jury to determine its value from their own knowledge will suffice as proof of value. Pharis v. Carver, 13 B. Mon. 236.

The value or market price of an article may be shown by direct or circumstantial evidence, or both. Atlantic Coast Line R. R. Co. v. Harris, 57 S. E. 1030.

Value, whether actual or as regulated by the market, is largely a matter of individual opinion and any testimony, direct or circumstantial, which would enable the jury to arrive at a fair conclusion, is admissible—including proof of value of similar property. Morrow Transfer Co. v. Robinson, 69 S. E. 317.

Where an article has no regular market value any witness familiar with the usual sale price of such article may testify as to its value. Wand v. Crawford, 141 N. W. 1041.

CHRISTIANSON, Ch. J. This is an action for the conversion of certain horses, cattle and farm machinery. Plaintiff's claim thereto is predicated upon a certain chattel mortgage which it is alleged the defendant Eli Bowles executed and delivered to the plaintiff on January 9th, 1923, to secure the payment of a certain note in the sum of $1700.00, dated on that same day and payable September 1st, 1923. This action was instituted September 22nd, 1923, and the complaint therein alleges that the defendants, C. H. Bowles and Eli Bowles, since

the execution of said chattel mortgage "have been and now are in possession of said personal property;" that default occurred in the terms and conditions of the promissory note and mortgage by reason of the failure to pay the indebtedness secured by the mortgage; "that after the maturity of said promissory note and mortgage and prior to the commencement of the action," to-wit, on September 22nd, 1923, the plaintiff duly demanded of the defendants, and each of them, the possession of said chattel property and that such demand was refused. The defendants answered separately. The answer of the defendant C. H. Bowles is, in effect, a general denial and placed in issue all the allegations of the complaint with the exception of the corporate existence of the plaintiff. The answer of the defendant Eli Bowles consisted of (1) a denial of the execution of the notes and mortgage; (2) a denial of ever having had possession of the said personal property described in the complaint and of any conversion thereof; (3) a plea that defendant's liability to the plaintiff was discharged by a discharge in bankruptcy entered August 20th, 1923. The case was tried to a jury, which returned a verdict in favor of the defendant, C. H. Bowles; and a verdict in favor of the plaintiff and against the defendant, Eli Bowles, for $1143.00, and interest from September 22nd, 1923. The defendant, Eli Bowles, moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied and defendant has appealed from the judgment and from the order denying such motion.

The evidence on the part of the plaintiff was to the following effect: That during the years 1920, 1921 and 1922 Eli Bowles occupied a farm belonging to his father, the defendant, C. H. Bowles; that prior to 1920 said Eli Bowles had been engaged in farming in the same neighborhood, but on farms belonging to persons other than his father; that prior to 1919 said defendant became indebted to the Bank of Pleasant Lake, and from time to time executed and delivered to it notes and chattel mortgages; that later the Bank of Pleasant Lake merged with the plaintiff bank, and the plaintiff bank became the owner of the notes and chattel mortgages held against the defendant by the Bank of Pleasant Lake; that between the date of such merger and January 9th, 1923, said defendant, Eli Bowles, executed and delivered to the plaintiff bank a number of chattel mortgages covering a large portion of the property described in the chattel mortgage which forms

the basis of this action; that on January 9th, 1923, the said defendant executed and delivered to the plaintiff the chattel mortgage under which plaintiff claims to recover in this action; that in May, 1923, the said defendant was adjudged a bankrupt; that after notice of meeting of creditors had been given in such bankruptcy proceeding, said defendant admitted to certain officers of the plaintiff bank that the property described in the mortgage in question was then on the premises occupied by the defendant; that said defendant for the first time denied the execution of the note and mortgage in suit at the first meeting of creditors in the bankruptcy proceeding. The note secured by the chattel mortgage was not paid when it became due, and plaintiff thereupon on the 22nd of September, 1923, served written demand upon both defendants for the property described in the chattel mortgage. No such property was delivered. Aside from the evidence relating to the statements claimed to have been made by Eli Bowles, and the recitals in the mortgage, no evidence was adduced tending to show that Eli Bowles ever had or possessed any of the property described in the mortgage, or even that such property ever existed. The cashier of the bank, who took the mortgage, stated that he had never seen the property. The plaintiff rested its case solely on the proposition that the defendant is estopped from denying either the existence or ownership of the property. This view was adopted by the trial court in both the rulings on evidence, and in the instructions to the jury. In instructing the jury the court said:

"If you find that this mortgage was a mortgage of Mr. Bowles, that Mr. Bowles did sign this mortgage as Mr. Nash contends in his testimony, then I say to you Gentlemen of the Jury, that under our law Mr. Eli Bowles would be liable to the bank in dollars and cents in this lawsuit to the extent of the value of that property described in the mortgage. Now Eli Bowles claims that he didn't own the property, or at least a portion of it, which is described in the mortgage. He claims also that he not only didn't mortgage that property but he says he didn't have any such property, or at least he didn't have a portion of that property. I say to you Gentlemen of the Jury, that if you find that he mortgaged this property, gave a mortgage to the bank upon the property described in the mortgage, under our law, he is estopped to deny that he wasn't the owner of that property, that is, his mouth is

closed to make any such claim as that. . . . I say to you, for the purpose of this lawsuit, that if you find that Eli Bowles gave the mortgage Exhibit 1, then Eli Bowles is liable in this lawsuit to this plaintiff in dollars and cents for the value of the property he mortgaged or assumed to mortgage to the bank in that mortgage. So if you find that he did sign the mortgage then so far as Eli Bowles is concerned the next question for you to decide will be the value of the property which he mortgaged to the bank."

Error is assigned on these instructions, and on the rulings on evidence based on the same theory of law which is announced in the instructions. So far as we can ascertain the precise question thus presented is one of first impression. No adjudicated case has been cited, and none has been found, in which the question has been considered. There are, of course, numerous decisions announcing, and applying, the familiar rule that one who has executed and delivered a mortgage containing covenants of ownership and warranty is estopped from denying his ownership, in an action to enforce the mortgage. (Bingenheimer Mercantile Co. v. Sack, 50 N. D. 381, 195 N. W. 969; Jones, Chat. Mortg. 5th ed. p. 171) ; and that a vendor of property, real or personal, who warrants title to the vendee, is estopped from asserting an after-acquired title to the property so sold, and that such title inures to the benefit of the vendee. 5 Enc. U. S. Sup. Ct. Rep. p. 932. But in all these cases, in whatever form the question arose, there was proof of the existence of the property. In no case was it even contended that one who had mortgaged or sold personal property, which did not in fact exist, could be held liable for the conversion of such non-existent property, on the theory that the covenants of warranty and ownership conclusively established the existence of the property.

"Estoppel," in the broad sense of the term, "is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, in pais." 21 C. J. 1059.

The primary object of the doctrine of estoppel as applied to the recitals in an instrument conveying or hypothecating property is to compel the parties to fulfill their contracts. Such estoppel is a mode of

preserving, rather than of acquiring, property, inasmuch as a person is concluded by his own act from disputing the title of another. And the estoppel of the deed or writing "will be limited to actions based upon it or growing out of the transaction in which it was executed, and does not extend to a collateral action where the cause is different, while the subject matter may be the same; though such recitals may be admissible in evidence." 2 Herman, Estoppel & Res Judicata, § 580; 11 Am. & Eng. Enc. Law, p. 401.

Accordingly, it is obvious that where a mortgagee seeks to enforce a mortgage, containing covenants of ownership and warranty, the mortgagor is estopped from asserting as a defense anything in contradiction of the covenants of his mortgage. Hence, when the mortgagee, upon default by the mortgagor, seeks to enforce the mortgage and subject the property covered thereby to the payment of the debt secured, the mortgagor is precluded from asserting as a defense that the covenants of ownership and warranty in the mortgage are untrue, and that, hence, plaintiff's title is defective. In such action, and between such parties, the mortgagee will be estopped from denying the truth of the covenants in his mortgage. But an action to recover damages for the conversion of property is not one to obtain the property; but one to obtain compensation for the injury sustained because of deprivation thereof. And upon the entry and satisfaction of a judgment in favor of the plaintiff, the title to the property becomes vested in the defendant, and relates back to the date of the conversion. 38 Cyc. p. 2112. Whether the doctrine of estoppel is applicable in an action brought by the mortgagee against the mortgagor for the conversion of the mortgaged property so as to preclude the mortgagor from asserting by way of defense that he had no title to the property mortgaged, and, hence, is unable to deliver it to the mortgagee is a question upon which there is a conflict in the authorities. The Supreme Court of Rhode Island has held the doctrine of estoppel to be applicable. Harvey v. Harvey, 13 R. I. 598. The Supreme Court of Alabama has held it inapplicable. McIntosh v. Parker, 82 Ala. 238, 3 So. 19. But in neither case was the question here involved considered. In both cases, the property described in the mortgages was in existence at the time the mortgages were executed; and the mortgages purported to cover certain existing property, described therein. And the question was, whether in a suit for con-

version, the mortgagor might show by way of defense that the property did not belong to him, and that, hence, he was unable to deliver it to the mortgagee upon demand. We find it unnecessary to determine which case announced the correct rule; for obviously it is one thing to hold that, in an action for conversion, the mortgagor is estopped from denying his covenants of ownership and warranty as to existing property, and quite another to hold, that in such action, these covenants are conclusive not only upon the question of ownership, but upon the question of existence of the property claimed to have been converted. In the one case, there is property subject to conversion. And the estoppel is directed at the ownership of such property. In the other case there is no property to which ownership can attach. And there is no property to be converted.

The gist of an action for the conversion of personal property, is the act of conversion,—that is, the wrongful act of depriving the owner thereof. Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747; 38 Cyc. 2007, 2008. If there is no conversion, there is no liability on the part of the defendant, even though plaintiff's title is undisputed. "To constitute conversion, there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner." Taugher v. Northern P. R. Co. supra. And "neither negligence, active or passive, nor a breach of contract, even though it result in the loss of specific property" constitutes a conversion. 38 Cyc. 2008, 2009. In Taugher v. Northern P. R. Co. it was sought to hold a shipper in damages for the alleged conversion of certain freight. Evidence was adduced of delivery of the property to the common carrier in sound condition and of the carrier's failure to redeliver upon demand. It was held that while this proof established a cause of action for the breach of the contract of the carrier, it did not establish a conversion. This court said:

"To constitute conversion there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner. 8 Wait, Act & Def. 1194; Bolling v. Kirby, 90 Ala. 215,

24 Am. St. Rep. 789, 7 So. 914; Terry v. Binghamton Nat. Bank, 30 Am. St. Rep. 87 and note (93 Ala. 599, 9 So. 299); 2 Kinkead, Torts, § 582; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608. The gist of an action on the contract is the failure to deliver, but the gist of this action is the conversion. Bigelow Co. v. Heintze, 53 N. J. L. 69, 21 Atl. 109. To maintain the action some wrongful act on the part of the appellant must be shown. The mere showing of a breach of contract does not necessarily prove conversion, though the defendant may be liable on the contract. The rules of evidence and measure of damages are not the same in an action for conversion and in one on the contract for carriage. A common carrier is liable for loss of property in transit in many instances where it is chargeable with no wrongful act, and even where its loss is without fault of the carrier, but the shipper is confined in such cases to the proper remedy. In most cases more than one remedy is applicable, and he has his election, while in others an action for conversion does not lie though one for damages for breach of contract may. If the shipper elects to sue for conversion, and is unable or fails to establish the elements necessary to constitute conversion, he must fail in that form of action. The burden is on the shipper, when he elects to seek the benefit of the measure of damages in an action charging conversion, to prove the act of conversion by showing a wrongful disposition or wrongful withholding of the property. Moore, Carr. 217; Wamsley v. Atlas S. S. Co. 168 N. Y. 533, 85 Am. St. Rep. 699, 61 N. E. 896; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. St. Rep. 608; Whitney v. Slauson, 30 Barb. 276. In such case the demand and refusal are only evidence of conversion where the defendant was in such condition that he might have delivered the property if he would. Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345, and Whitney v. Slauson, supra; Hawkins v. Hoffman, 6 Hill, 586, 41 Am. Dec. 767, 24 Am. St. Rep. page 807, note. The action for conversion for failure to deliver or return on demand does not lie against a carrier for a mere nonfeasance when the nonfeasance of the defendant was the cause of the loss of the goods, nor does it lie for goods stolen from the carrier nor for negligence causing the loss. It must be for an actual wrong, an injurious

conversion, something more than a bare omission." 21 N. D. 120, 129 N. W. 750.

This language and reasoning seem quite applicable in the case at bar, for, when stripped of all fiction, the actual basis of plaintiff's case is, not that the defendant deprived it of certain property on September 22nd, 1923, but, that on January 9th, 1923, he executed and delivered to it a mortgage containing certain false and untrue covenants. There is not the slightest evidence that defendant on September 22nd, 1923, or at any other time, actually converted any of the property, in which plaintiff claims a mortgage interest. On the contrary, whatever proof there is, is to the effect that there was no property to convert, and, hence, no conversion.

We are of the opinion that the rulings of the trial court, in the admission of evidence, and its instructions to the jury were erroneous. We are also of the opinion that upon the record before us there is no evidence to sustain the verdict in favor of the plaintiff. Whether this defect in the proof can be supplied upon another trial, we have no means of knowing. Upon this trial the plaintiff proceeded on the theory that it was not required to prove the existence of the property or an actual conversion thereof within the accepted meaning of those terms, but that the doctrine of estoppel would and did establish these propositions of facts, without regard to the actual facts. It is possible that upon another trial, plaintiff may be able to supply actual proof of the material facts, and hence judgment will not be ordered notwithstanding the verdict; but the case will be remanded for a new trial upon all the issues between the plaintiff and the defendant, Eli Bowles. So far as the defendant, C. H. Bowles, is concerned, the action is terminated as no appeal has been taken from the judgment rendered in his favor. We express no opinion as to the effect of the discharge in bankruptcy, as the discharge though pleaded was not proven.

Reversed and remanded for a new trial.

NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur.