582 A.2d 539

**Linda Lee FINK**

v.

**John W. POHLMAN, Jr., et al.**

**No. 47, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 29, 1990.

Judith S. Stainbrook (Stephen P. Bourexis, on the brief), Westminster, for appellant.

Teresa Butler (Butler & Simmons, P.A., on the brief), Wheaton, for appellees.

ARGUED BEFORE MOYLAN, ROSALYN B. BELL and KARWACKI, JJ.

ROSALYN B. BELL, Judge.

This appeal arose from the dismissal by the Circuit Court for Baltimore County of an action for breach of contract, conversion and breach of trust. The action grew out of a Florida estate and was brought by Linda Fink against her brothers, John Pohlman, individually and as personal representative of the estate, and Bruce Pohlman, Individually. Linda has appealed the decision only as it relates to the brothers individually and argues the following:

— An action for conversion may arise out of an alleged breach of contract to make payment.

— A sister's promise to forebear contesting a will in exchange for a promise of a fixed share of the estate may give rise to a fiduciary duty such that a breach of this duty allows the imposition of a constructive trust on the promised share of the estate.

— A plaintiff is entitled to a jury trial on the factual issues in her complaint where equitable relief is requested.

We agree with Linda on the question of the breach of trust. We explain.

## FACTS

Norma L. Pohlman, a resident of Florida, died on September 26, 1984. Four children survived her: appellant, Linda Lee Fink; appellees, John Pohlman and Bruce Pohlman; and Dawn Pohlman Forgrave, who is not a party to this litigation.

Shortly after their mother's death, John and Bruce went to see their mother's attorney. They were advised of the contents of Mrs. Pohlman's last will and testament and codicil. Mrs. Pohlman's December 14, 1978 will provided in paragraph IV that should her husband predecease her, her estate would be divided equally among the four children. The September 13, 1983 codicil modified paragraph IV of the will to the extent that the daughters, Linda and Dawn, would no longer receive one-quarter of the estate, but

would receive $10 each. John was named personal representative under the will.

John and Bruce admit that the children conferred and they agreed to share the estate with their sisters. John, as personal representative, received Letters of Administration. The will and codicil were admitted to Probate in Florida in December of 1984.

The parties agree, although it did not appear in the complaint, that the estate assets were located in Florida and consisted of a Cape Coral home, a White Sands Condominium, a mortgage and promissory note, a car, and household furnishings. The household furnishings were divided among the children. The car was sold and the proceeds were used to pay estate debts. Linda alleges in her complaint that, by the agreement of the siblings, she was to receive a full one-quarter share of the estate which would amount to between $15,000 and $18,000.[1]

A Petition for Discharge and Report of Distribution was filed in the Circuit Court for Lee County, Florida. The petition indicated that Linda and Dawn received only $10 from the estate. An Order of Discharge was issued on October 28, 1985. This effectively closed the estate, releasing John as personal representative and we infer the real property devolved to the two brothers. According to Linda, some months after discharge, John indicated he was unable to sell the primary estate assets. He offered both sisters $6,000 in lieu of any additional specific property. Linda rejected that offer, indicating she wanted what she was promised—$15,000 to $18,000.

Linda alleged she did not contest the will in exchange for the brothers' promise that both sisters would receive one-quarter of the estate. Linda brought suit against her brothers, John and Bruce, in a Maryland court. Linda's

---

1. In an interrogatory, however, she states that share was to be in the form of one-half the proceeds of the sale of the house, the condominium and the car. We note this was not before the court on the motion to dismiss.

claim against John as personal representative included counts in breach of contract, conversion, and breach of trust. With regard to the latter two claims, John and Bruce also were sued individually. No breach of contract action was brought against the brothers individually. Linda sought a jury trial which the court struck on the breach of trust counts.

Linda alleged that she had a most confidential relationship with her brothers. She alleged that she "reposed the greatest confidence and trust in" them and believed they "would deal fairly and justly with [her] in all things." She also alleged that she "would not have forebore [sic] from contesting the said will but for the trust and confidence she placed in" them.

In November of 1989, the Circuit Court for Baltimore County granted appellees' renewed motion to dismiss. The court found it had no jurisdiction over John as personal representative because the State of Florida had appointed him, and the claim against him as personal representative was based on a contract made in that capacity. The court also found there could be no conversion where there was an *alleged* breach of contract. Finally, the court found that a familial relationship was insufficient to impose a fiduciary duty or relationship upon which an action for breach of trust could be based. While the court was less than specific, apparently it granted the motion to dismiss based on the failure to state a claim upon which relief could be granted. Rule 2–322(b).

## PERSONAL REPRESENTATIVE

The trial judge found that the court did not have "jurisdiction with respect to John Pohlman, Jr. in his capacity as personal representative, that capacity being one bestowed on him in the State of Florida, under Florida law, and in the Court's opinion, any suit that would be maintained against him in that capacity could be maintained only in the State of Florida and not Maryland." On this basis, the court dis-

missed all counts against John as personal representative. This dismissal is not at issue on appeal. This does not, however, resolve the issues pertaining to John and Bruce as individuals.

## STANDARD OF REVIEW

Under Rule 2–322, a motion to dismiss for failure to state a claim serves the same function as our former demurrer. *Broadwater v. State*, 303 Md. 461, 462 n. 1, 494 A.2d 934 (1985). This Court set out that standard in *Ungar v. State*, 63 Md.App. 472, 479, 492 A.2d 1336 (1985):

> "At the threshold, we acknowledge that Ungar has cited the appropriate test to be used to review the propriety of the grant or denial of a demurrer; *well pleaded allegations of fact contained in the complaint are taken as true and the complaint should not be dismissed unless it appears that no set of facts can be proven in support of the claim set forth therein.*" (Citations omitted.) (Emphasis added.)

This statement guides our review of the first two issues appellant raises on appeal.[2]

## CONVERSION

Appellant contends that the trial court erred in dismissing her counts for conversion. The trial court reasoned that "[t]here can be no conversion in a situation where there has been an alleged breach of this contractual undertaking." Appellant argues that a conversion may arise out of a breach of contract to pay money when one of the parties to the contract fails to pay over the agreed sum. We disagree and explain.

Maryland and other jurisdictions have reviewed whether mere nonfeasance or neglect, or mere failure to perform under a contract will support an action in conversion, or

---

**2.** We make no holding on whether the breach of trust action would survive a summary judgment motion as that is not before us.

whether a positive *tortious act* is necessary to support an action in conversion arising under a contract. *Western Maryland Dairy, Inc. v. Maryland Wrecking and Equipment Co.*, 146 Md. 318, 328, 126 A. 135 (1924); *Farmers' State Bank of Knox v. Bowles,* 52 N.D. 553, 203 N.W. 903, 905 (1925); *Williams v. International Harvester Co.*, 172 Or. 270, 141 P.2d 837, 841 (1943), *overruled on other grounds, Rogue Valley Memorial Hosp. v. Salem Ins. Agency, Inc.*, 265 Or. 603, 510 P.2d 845, 851 (1973); *Emmert v. United Bank & Trust Co. of California,* 14 Cal. App.2d 1, 57 P.2d 963, 964–65 (1936).

■ In *Western Maryland Dairy* (WMD), WMD sold a piece of real property to News Publishing Co. (NPC). WMD reserved the right to remove all the fixtures prior to the date of transfer. WMD, pursuant to another agreement, sold the fixtures on the property to Maryland Wrecking and Equipment Co. (MWEC). The time set for removal of the fixtures by MWEC was before the date projected for the transfer of the real property to NPC. After the deed was delivered and after the time when MWEC was to have completed removing the fixtures, NPC ordered MWEC to stop removal. NPC also demanded that the keys to the property be given to it. MWEC complied with both these requests. MWEC sued WMD and NPC for conversion. Since the fixtures were not timely removed, and WMD no longer controlled the real property or had actual or constructive possession of the chattels, the Court of Appeals concluded there was no conversion by WMD. *Western Maryland Dairy,* 146 Md. at 329–30, 126 A. 135. The Court of Appeals stated:

"[I]f there be no unlawful taking or exercise of dominion over a chattel, a *conversion cannot be based upon the mere failure of the defendant to perform with regard to the chattel some affirmative act which he has by contract assumed,* or upon a non-feasance or neglect of a legal duty. It would seem that to maintain the action of trover some positive, tortious act is indispensable."

*Western Maryland Dairy*, 146 Md. at 328, 126 A. 135 (citations omitted) (emphasis added). The clear import of this language is that a mere failure to perform under a contract is not enough. To establish a conversion under a contract, there must also be a positive, tortious act.

Decisions of other jurisdictions support this conclusion. In *Farmers' State Bank*, the alleged conversion arose from the failure of mortgagors to pay a note secured by a chattel mortgage on certain farm animals and machinery. *Farmers' State Bank*, 203 N.W. at 903. In considering whether a conversion took place, the North Dakota Supreme Court turned to one of its earlier cases:

> " 'To constitute conversion, there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner.' "

*Farmers' State Bank*, 203 N.W. at 905, quoting *Taugher v. Northern Pacific Railway Co.*, 21 N.D. 111, 129 N.W. 747, 750 (1910). The Court in *Farmers' State Bank* continued:

> "And 'neither negligence, active or passive, nor a breach of contract, even though it result in the loss of specific property' constitutes a conversion."

*Farmers' State Bank*, 203 N.W. at 905 (citation omitted). The Court found that, in light of this standard, the evidence did not establish a conversion. *Farmers' State Bank*, 203 N.W. at 906. The opinions of other jurisdictions agree with this cited language. *See Williams*, 141 P.2d at 841; *Emmert*, 57 P.2d at 964–65. In light of our decision in *Western Maryland Dairy* and the decisions of other jurisdictions we have reviewed, we conclude that a positive, tortious act is required to establish a conversion under a contract and a mere breach of contract is not sufficient.

This conclusion is supported by the decision of the Court of Appeals in *K & K Management v. Lee*, 316 Md. 137, 557 A.2d 965 (1989). *K & K Management* involved an action for breach of contract, tortious interference with busi-

ness/economic relations, and conversion founded on the termination of a contract and barring access to a restaurant and the property therein. *K & K Management,* 316 Md. at 146–47, 557 A.2d 965. The Court held that a conversion may arise out of a contract. *K & K Management,* 316 Md. at 174, 557 A.2d 965. The holding is consistent with the rule stated in *Western Maryland Dairy,* in that a positive tortious act, beyond a breach of contract, was committed. Specifically, in *K & K Management,* appellees were physically barred from entry to the restaurant that was the subject of the agreement and denied access to their property within the restaurant. *K & K Management,* 316 Md. at 171, 557 A.2d 965.

Therefore, to establish a conversion growing out of a contract, a positive tortious act beyond a mere breach of the contract is necessary. In *K & K Management,* the breach of contract was the termination of the agreement; the positive tortious act was barring access to the restaurant. In the instant case, the breach of contract was the failure to convey appellant's interest; no positive tortious act beyond the breach was alleged.

—Appellant's Case Law—

Appellant cites numerous cases in support of her position that a breach of contract alone can result in an action for conversion. These cases are inapposite. For instance, appellant relies on *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 366 A.2d 7 (1976). *Wedeman* turned on fraudulent inducement to contract. The tort was separate from and, in fact, induced the formation of the contract. *Wedeman,* 278 Md. at 529–30, 366 A.2d 7. In the instant case, the breach of the contract was the alleged tort. Appellant also relies on *Maryland Casualty Co. v. Wolff,* 180 Md. 513, 25 A.2d 665 (1942), and *K & K Management,* 316 Md. at 137, 557 A.2d 965. Neither of these cases states that a conversion may be brought *solely* on a breach of contract. We hold the trial court did not err in dismissing the counts of conversion.

## BREACH OF TRUST

■ The circuit court concluded that a "trust in the brother or the brothers, because of a family relationship, is not that kind of a trust that mounts [sic] up to a fiduciary relationship and allows for an action for breach of trust" and dismissed the counts based on breach of trust. We disagree.[3]

Appellant acknowledges that, without more, a mere brother-sister relationship is insufficient to establish the "confidential relationship" necessary to establish a fiduciary obligation that could give rise to a breach of trust.[4] The Court of Appeals has held that a confidential relationship exists

"where one party is under the domination of another, or where, under the circumstances, such party is justified in assuming that the other will not act in a manner inconsistent with his or her welfare."

*Bass v. Smith,* 189 Md. 461, 469, 56 A.2d 800 (1948). *See also Wimmer v. Wimmer,* 287 Md. 663, 668, 414 A.2d 1254 (1980).

"In the absence of the legal presumption which arises from certain relationships ... the existence of a confidential relationship is a question of fact, and not law." *Sanders,* 261 Md. at 276, 274 A.2d 383 (citations omitted); *see Zimmerman v. Hull,* 155 Md. 230, 239–40, 141 A. 531 (1928). Thus, whether appellant was under the domination of her

---

**3.** Appellant sought relief in the form of a constructive trust and/or damages and punitive damages.

**4.** The Court has found that confidential relations sufficient to give rise to a breach of trust have arisen in familial relationships. *Sanders v. Sanders* 261 Md. 268, 277–78, 274 A.2d 383 (1971) (father and son); *Bass v. Smith,* 189 Md. 461, 469, 56 A.2d 800 (1948) (stating "doctrine" of confidential relations is particularly applicable in a parent-child relationship); *Miller v. Miller,* 188 Md. 567, 580, 53 A.2d 573 (1947) (indicating that a "special trust and confidence" could be placed in a sibling); *Rice v. Rice,* 184 Md. 403, 412, 41 A.2d 371 (1945) (finding a confidential relationship existed between father and son); *Ebert v. Ritchey,* 54 Md.App. 388, 400, 458 A.2d 891 (1983) (finding a "special trust" created amongst siblings).

brothers and whether appellant was "justified in assuming that the other will not act in a manner inconsistent with ... her welfare" are questions of fact.

Ordinarily, a family relationship, alone, does not justify an assumption that brothers will act in a manner consistent with a sister's welfare. The allegations in this complaint go beyond a mere familial relationship. The complaint alleges: 1) that appellant, relying on assurances of a one-quarter share in the estate and her familial relationship, forbore contesting the will; 2) that she would not have done so but for the trust and confidence she placed in her two brothers; 3) that when she asked that the promise be put in writing, her brother John "stated, 'Don't you trust your brothers?' or words to that effect"; 4) that one brother was personal representative and the two brothers were the residuary beneficiaries. These facts are capable of justifying a finding that the brothers would not act in a manner inconsistent with appellant's welfare. We hold the dismissal of the breach of trust counts was error.

## JURISDICTION

■ Appellees contend that the grant of the motion to dismiss is justifiable on grounds that the Maryland courts do not have subject matter jurisdiction. At this point, they do not contest that all the parties are Maryland residents and the courts have personal jurisdiction.[5] Subject matter jurisdiction, however, turns on two points: the nature and the subject matter of the action.

### —Nature—

Transitory actions are ones that may be "brought in any state, regardless of where the cause of action arose, provided, of course, that other necessary conditions for the court to act are fulfilled." 21 C.J.S. *Courts* § 38 (1940). A

---

**5.** At the initiation of this action, Bruce was living in Wyoming. He now lives in Maryland and personal jurisdiction is not an issue on appeal.

transitory action follows the defendant. *Id.* As the Court of Appeals noted in *Texaco v. Vanden Bosche,* 242 Md. 334, 338, 219 A.2d 80 (1966),

> "a transitory cause of action could, and generally would, be decided outside the jurisdiction of its origin by any court in any other forum which had jurisdiction of the subject matter and the parties."

Generally, a personal action is transitory and may be filed wherever the parties may be found. 21 C.J.S. *Courts* § 40 (1940). Since damages are sought as an alternative remedy in the breach of trust count, the action is personal and therefore transitory, at least in part. According to the briefs of the parties, however, all the assets, save the Florida time-share condominium and residence, constitute personal property and are apparently within the State of Maryland. Therefore, the issue of whether the action is transitory need not be reached.

### —Subject Matter Jurisdiction—

In the count for breach of trust, appellant seeks a constructive trust of one-quarter of the estate in the possession of the brothers to the extent it is either converted into cash or is personal property over which the court has jurisdiction. Alternatively, she seeks damages.

Lack of subject matter jurisdiction, however, could defeat jurisdiction where the remedy sought is a constructive trust on property. *See Texaco,* 242 Md. at 338, 219 A.2d 80. "A court cannot exercise jurisdiction over the title to land located in another state." *Dobbyn v. Dobbyn,* 57 Md.App. 662, 668 n. 1, 471 A.2d 1068 (1984); *see Wilmer v. Philadelphia & Reading Coal & Iron Co.,* 130 Md. 666, 675, 101 A. 538 (1917). Moreover, courts have "no jurisdiction of an action in rem where the property in controversy lies without the territorial limits of its jurisdiction." 21 C.J.S. *Courts* § 43 (1940).

The Court of Appeals has stated, however, that "the *situs* of personal property is the domicile of the owner...."

*Loney v. Penniman,* 43 Md. 130, 133–34 (1875). In *Loney,* the assets consisted of debts—choses in action—or, in other words, personal property owed a business firm. *Loney,* 43 Md. at 133. While *Loney* does not support appellant's contention that there is jurisdiction over the real property at issue, it clearly supports subject matter jurisdiction over the mortgage and promissory note. As chattel paper, the mortgage and promissory note are personal property. Subject matter jurisdiction is available at the situs of personal property. That situs is the domicile of the owners. *Loney,* 43 Md. at 133–34. Both appellees are domiciled in Maryland. Therefore, to the extent the property is either in Maryland or reduced to cash, we hold there is subject matter jurisdiction.

## JURY TRIAL

Appellant contends the May 1988 order striking her jury demand on the breach of trust counts was error.

■ Both parties cite *Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987), as authority for their position. In *Higgins,* the Court of Appeals determined the impact the comprehensive changes to the Maryland Rules, which occurred in 1984, had upon the availability of jury trials. *Higgins,* 310 Md. at 541, 530 A.2d 724. In *Higgins,* the Court, quoting *Beacon Theatres v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959), stated:

"Where the existence of both legal and equitable issues within the same case requires selection between the jury and the court as the determiner of common issues, the discretion of the trial court 'is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.' "

*Higgins,* 310 Md. at 544, 530 A.2d 724. Acknowledging that it would turn to federal case law to determine the scope of Maryland's jury trial right, the Court of Appeals reviewed several federal cases. The Court concluded that, in federal courts,

> "[i]f an asserted counterclaim presents a legal claim historically accorded the right to jury trial and raises factual issues in common with the plaintiff's equitable claim, the defendant is ordinarily entitled to a jury determination of those factual legal issues."

*Higgins,* 310 Md. at 547, 530 A.2d 724.

*Higgins* involved the construction of a house. The builder sought specific performance of a contract; namely, execution of a first mortgage in favor of the builder following completion of the house. Defendant contended the structure did not conform to the contract and counterclaimed. *Higgins,* 310 Md. at 535, 530 A.2d 724. Defendant sought a jury trial. *Higgins,* 310 Md. at 535, 530 A.2d 724. The Court of Appeals held that the trial court could not enter a judgment for specific performance without first determining the amount of the mortgage, which amount could not be determined without a decision on whether the defendant had a right to recoupment flowing from the structure's failure to conform to the contract. *Higgins,* 310 Md. at 552, 530 A.2d 724. The Court concluded that the proper procedure was to allow a jury to determine the legal issues, namely the breach of contract and damages, if any, before the trial court determined whether specific performance was the appropriate remedy. *Higgins,* 310 Md. at 552, 530 A.2d 724.

We reviewed the status of jury trials in mixed law/equity actions in *Hashem v. Taheri,* 82 Md.App. 269, 272–73, 571 A.2d 837 (1990), concluding:

> "If a claim is brought that historically would have been filed on the law side of the court and a jury trial is properly demanded, a jury will hear the case. Equitable claims will be decided by the court without a jury." (Citation omitted.)

A breach of trust action is historically an equitable action to be tried by the court. The effect of the merger of law and equity and the *Higgins* decision is not to convert nonjury cases to jury cases. If a count for breach of

contract survived, we would be faced with a quite different situation. In the instant case, however, appellant is not entitled to a jury trial on the breach of trust claim.

The primary remedy sought here, a constructive trust, is also equitable. In the alternative, damages are sought Where the action itself is equitable in nature, however, seeking a legal remedy in the alternative does not necessarily entitle appellant to a jury trial.

While the Court of Appeals has not directly addressed this issue, it has addressed whether an equitable counterclaim to a legal action should be submitted to a jury. *Impala Platinum v. Impala Sales*, 283 Md. 296, 389 A.2d 887 (1978). In *Impala*, appellant had filed an action in assumpsit which is an action at law. *Impala*, 283 Md. at 310, 389 A.2d 887. The counterclaim was for breach of contract and fiduciary duty and requested both equitable and legal relief. *Impala*, 283 Md. at 311, 389 A.2d 887. The counterclaimant had been granted a jury trial. *Impala*, 283 Md. at 320, 389 A.2d 887. The Court held that, because all claims for equitable relief had been stricken, any relief or remedy which could be granted was on the law side of the court. Thus, the jury trial was proper. *Impala*, 283 Md. at 320–21, 389 A.2d 887.

*Impala*, however, is distinguishable from the instant case. Here, the only claim remaining is an equitable claim. Moreover, appellant's claim for damages would not be invoked unless the assets of her mother's estate no longer existed. Appellant's complaint requests that the court "[a]ward [appellant] damages in the amount that the corpus conveyed to [appellant] is less than the full one-quarter share of the said estate...." A collateral request for damages, in a case such as this, does not alter the essentially equitable character of the action itself or the relief sought such that appellant would be entitled to a jury trial.

This Court has also noted:

"We are constitutionally required to 'inviolably preserve' the right of trial by jury in actions at law, and so 'where

both legal and equitable issues are presented in a single case, "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims." ' " (Ellipses in original.)

*Hashem,* 82 Md.App. at 273, 571 A.2d 837, quoting *Higgins,* 310 Md. at 532, 530 A.2d 724. Where the action pursued and the remedy elected are in equity, however, there is no right to a jury trial. In the case at bar, any prayer for a legal remedy is inexorably intertwined with the equitable nature of the claim made and the relief sought. Therefore, it is proper for the trial court, sitting in equity, to decide all of the issues. Appellant is not entitled to a jury trial on the issue of damages in her breach of trust claim.

"[I]f the essential or major part of a cause is exclusively of equitable cognizance, the right of trial by jury does not obtain, even though certain elements of an action at law may be incidentally involved. Moreover, it has been held that where equitable issues are involved equity will assume full jurisdiction, and in such case there is no right to a jury trial although the case also involves legal issues."

50 C.J.S. *Juries* § 25 (1947) (footnotes omitted). Two University of Baltimore academicians, commenting on suits seeking both specific performance and damages, wrote:

"If a claim for damages is joined with one for specific performance, the damages are generally sought in the alternative or for the recoupment of incidental losses for wrongful detention. In either event, states generally hold that there would be no right to trial by jury."

R. Bourne & J. Lynch, *Merger of Law and Equity Under the Revised Maryland Rules: Does it Threaten Trial by Jury?,* 14 U.Balt.L.Rev. 1, 61 (1984) (footnote omitted).

We perceive no error as to the jury demand.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID TWO–THIRDS BY APPELLANT AND ONE–THIRD BY APPELLEES.